## HOLDEN et ux. v. GIBBONS et al.

### No. 8394.

Court of Civil Appeals of Texas. Austin.

Jan. 27, 1937.

Rehearing Denied Feb. 17, 1937.

N. C. Walker, of San Saba, for appellants.

McCLENDON, Chief Justice.

Suit by Holden and wife to set aside, on the ground of fraud, a judgment (and sheriff's deed thereunder) foreclosing a trust deed lien upon 640 acres of land in McCulloch county, to the extent that it included 200 acres which constituted their

rural homestead. From a judgment in favor of defendants upon a special issue verdict, Holden and wife have appealed.

The assignments of error (26 in number) are confined, with a single exception, to rulings upon evidence and refusals to submit specially requested issues.

The questions presented may be more readily understood from the following general statement:

Holden and wife had resided upon the land continuously for many years with the exception of 1928 and 1929, when they resided on rented land in another part of the county. No question was raised, however, as to the homestead character of the land in suit. March 14, 1928, Holden borrowed from W. H. Gibbons $2,000, evidenced by note due three years after date, secured by trust deed upon the entire 640 acres; in which note and trust deed Mrs. Holden joined. J. H. Baker, an attorney of San Saba, examined the title for Gibbons. In his opinion on the title he stated: "I presume that 200 acres of this land is subject to a homestead exemption so that there would be only 440 acres available as security for a loan."

W. H. Gibbons died intestate March 18, 1932. No part of the note, principal, or interest was ever paid. Suit upon the note and for foreclosure was filed February 9, 1934, by J. W. Gibbons as administrator, and by him and two others as sole heirs at law of W. H. Gibbons and his predeceased wife, against Holden and wife. Citations returnable to the next term of court beginning April 23, 1934, were served upon Holden and wife February 16, 1934. An answer signed by Hon. Herbert Adkins as attorney for Holden and wife was filed May 2, 1934, consisting of general demurrer and denial, plea asking that execution be suspended for 90 days in case of judgment, and plea of Mrs. Holden's coverture in bar of her personal liability on the note. The same day judgment upon trial was rendered against Holden on the note and against him and wife foreclosing the lien. The judgment provided that no execution was to issue for 90 days. Order of sale issued December 1, 1934, and the land was sold thereunder to the plaintiffs in judgment January 1, 1935.

The instant suit was filed a few days later, predicated upon fraud allegations substantially as follows:

Agreement by W. H. Gibbons when the loan was contracted that only 440 acres was to be included in the trust deed. Like agreement by Baker who drew the trust deed. Reliance upon these agreements by Holden and wife causing them not to read the instrument before signing it. Statement by J. W. Gibbons that he was claiming a lien upon only 440 acres and would only seek foreclosure on that amount. Promise of Sam McCollum, attorney for plaintiffs, made to Holden during the term of court at which judgment was taken, that he would not take judgment for 90 days and not issue execution until 90 days after judgment. The Holdens did not discover that the suit or judgment included the homestead 200 acres; but relying upon the above promises and representations, and believing they had been carried out did not read the trust deed or citations, and for these reasons did not assert in the suit their homestead interest in the land. Generally speaking, the testimony of Holden supported these allegations. Evidence to the contrary, upon each material point, was presented by appellees.

Omitting those not answered, the special issues submitted and the jury's answers follow:

"1. Do you find and believe from a preponderance of the evidence that W. H. Gibbons agreed with J. H. Holden to loan him two thousand dollars, secured by lien on only 440 acres of land?" Answer: "No."

"2. Do you find and believe from a preponderance of the evidence that J. H. Holden instructed J. H. Baker, attorney, to include, and that said J. H. Baker agreed to include, only 440 acres of plaintiff Holden's land in the deed of trust to be drawn securing the note for two thousand dollars payable to W. H. Gibbons?" Answer: "No."

"3. Do you find and believe from a preponderance of the evidence that prior to the filing of suit in cause No. 3155, styled J. W. Gibbons et al versus J. H. Holden et ux, that J. W. Gibbons told the plaintiff Holden that he was claiming a lien upon only 440 acres of land, and would seek foreclosure upon only 440 acres of Holden's land?" Answer: "No."

"4. Do you find and believe from a preponderance of the evidence that the plaintiff J. H. Holden failed to read the citation served upon him in cause No. 3155, styled J. W. Gibbons et al vs. J. H. Holden et al?" Answer: "No."

"5. Do you find and believe from a preponderance of the evidence that the plaintiff Pearl Holden failed to read the citation served upon her in cause No. 3155, styled J. W. Gibbons et al versus J. H. Holden et al?" Answer: "No."

"6. Do you find and believe from the evidence in this case that J. H. Holden and wife, Pearl Holden knew or had reason to believe prior to May 2nd, 1934, that the plaintiffs, J. W. Gibbons et al, in said cause No. 3155, were seeking a foreclosure of deed of trust lien on the entire 640 acre tract of land owned by said Holden and wife?" Answer: "Yes."

"9. Do you find and believe from the preponderance of the evidence that the answer filed in said cause No. 3155 by attorney W. H. Adkins purporting to be filed on behalf of the defendant J. H. Holden and wife, was filed without the knowledge and consent of said J. H. Holden?" Answer: "No."

"10. Do you find and believe from a preponderance of the evidence that the plaintiff was present in court on May 2nd, 1934, with attorney W. H. Adkins when said cause No. 3155 was tried and judgment rendered against Holden?" Answer: "Yes."

"11. Do you find and believe from a preponderance of the evidence that the plaintiff J. H. Holden was free from negligence as that term is hereinabove defined in failing to inform W. H. Adkins prior to the trying of said cause No. 3155 that he and his wife had a homestead right in the lands sought to be foreclosed upon in said suit?" Answer: "No."

"12. Do you find and believe from the preponderance of the evidence that Sam McCollum, while acting as attorney for the plaintiffs, J. W. Gibbons et al in said cause No. 3155, and at the May Term, A. D. 1934, of this court, promised J. H. Holden that he would give him ninety days to raise the money to pay off his note due Gibbons before taking judgment in said cause No. 3155?" Answer: "No."

"14. Do you find and believe from a preponderance of the evidence that the defendants, J. H. Holden and wife, Pearl Holden, under all the facts and circumstances shown by the evidence were free from negligence as that term is above defined in failing to file an answer in said cause No. 3155, setting up their homestead right in the lands described in said deed of trust and sought to be foreclosed upon in said suit?" Answer: "No."

We will first consider appellants' specially requested issues, all of which were refused.

■ The first and second were in substantially the same language as the court's sixth, except that the first related to Holden alone and the second to Mrs. Holden alone. It is manifest that the jury's answer to the sixth issue was to the effect that both Holden and wife had reason to believe that the suit covered the entire 640 acres. Any error, therefore, in refusing to submit an issue as to each separately, became harmless. A finding that either did not have reason so to believe would require a negative answer to the issue, the effect of which was to place upon appellees a heavier burden than the law required. Of this appellants are not in position to complain. The situation is clearly analogous to that presented in Southern Surety Co. v. Solomon (Tex.Civ.App.) 4 S.W.(2d) 599.

■ The third is in substantially the same language as the court's second.

■ The fourth inquired whether Holden believed the 200 acres was excluded at the time he executed the trust deed. It was immaterial what Holden believed was in the instrument, if no fraud was committed upon him; and fraud was negatived under the answers to the court's first and second issues.

■ The only difference between the fifth and the court's twelfth is that in the former the promise of McCollum was that he would give Holden "ninety days in which to raise the money to pay off plaintiff's debt in said cause, and that in event plaintiff failed to raise such money in ninety days he would give them ninety days after judgment to raise the money and pay off the debt." The only material issue was whether McCollum agreed to give Holden 90 days before taking judgment. Whether he agreed to give 90 days after judgment was immaterial, since the court allowed that 90 days without protest from McCollum.

■ The sixth was predicated upon an affirmative answer to the fifth; consequently it became immaterial under the jury's negative answer to the court's twelfth.

■ The seventh was whether Mrs. Holden authorized Holden to employ Adkins. This was immaterial because filing of the answer was immaterial. If no answer had been filed, judgment by default

would have been taken against her. She was properly served with citation and it was incumbent upon her to defend the suit unless prevented by the fraud of appellees or their attorney, which other findings of the jury negatived.

■ The eighth was whether Adkins was negligent in not pleading the homestead defense. Adkins was not a party to the suit, and his failure to discover and plead this defense was not a material issue in the case. It was not controverted that Adkins knew nothing of this defense. Holden said nothing to him about it. In fact he testified that he did not know the homestead was included in the trust deed and suit until a day or two before the sale. Adkins testified Holden told him he had no defense to the suit and only wanted him to secure a continuance so he could raise the money to pay the debt. Adkins endeavored to get the case continued to no avail. He was successful in obtaining a 90-day stay of execution. He was paid no fee for his services.

■ The ninth and twelfth submitted severally as to Mr. and Mrs. Holden the identical issue submitted jointly as to them in the court's fourteenth. If appellants were entitled to have these issues submitted at all, the court's refusal to submit them severally was error. Each had a homestead estate in the property, to divest which required a valid judgment. Whether the judgment rendered as to each was valid against the direct attack made by the suit depended upon whether it was procured by fraud in one or more of the particulars asserted. If either Holden or his wife was free from negligence in not asserting the defense, then as to him or her, the right to set the judgment aside was established. In other words, this issue included in its scope every material ultimate fact issue in the case. Either might have been negligent in a variety of ways, such as (1) in failing to read the trust deed, or (2) the citation, or (3) in not discovering before the trial that the homestead was involved. On the other hand, reliance either upon the alleged representation of J. W. Gibbons or promise of Mc-Collum might have freed them or either of any negligence. The effect, therefore, was to submit the entire case, involving mixed questions of law and fact in a single issue. Clearly, this was improper. The essential facts establishing negligence vel non were specifically submitted in other issues which the jury answered. The requested issues were clearly multifarious, and too indefinite to require their submission.

■ The tenth and eleventh inquired severally as to each whether Holden and wife knew that a judgment had been rendered covering the entire 640 acres. Such knowledge was not material unless their duty to know was excused by one or more of the acts of fraud, representations, or promises relied upon. Suppose these issues had been submitted and answered no; the only proper judgment under the remaining issues would have been the one rendered by the court. On the other hand, had the jury answered the remaining issues favorably to appellants, judgment in their favor would have followed necessarily with these issues omitted.

We now consider the assignments based upon rulings upon the evidence.

■ The court precluded answer by Holden to the following question: "What do you now claim as your homestead?" Also was excluded a homestead designation executed February 4, 1935. There was no error in these rulings because (1) the excluded evidence related to a time after the judgment and sale and the rights of the parties had become fixed, and (2) the homestead was not submitted to the jury as an issue in the case.

■ In ruling upon some of the testimony regarding the homestead character of the land, the court stated: "Sustained as immaterial. There is no issue in the case about its being homestead." Appellants' attorney thereupon announced: "Exception." Error is assigned, not only upon the ruling but upon the statement made by the court. The following quotation from appellants' brief shows the point made in this regard: "I am of the opinion that what the court really intended to say was that there was no question but that plaintiffs had a homestead interest in this land, under the evidence and pleadings in this case, and it was so treated and considered in the charge of the court as no issue was submitted to the jury on this issue, and of course if this was the intention of the court it was favorable to plaintiffs, but if this was not the construction put on it by the court and the jury it would be very injurious and prejudicial to plaintiffs. As to what the jury might have thought of this remark, I am unable to say, but taking the language as used by the court it certainly told the jury, in effect, that plaintiffs had no homestead right in the lands

in question, and for this reason I think it was prejudicial, although no issue was submitted to the jury on the issue made that plaintiffs had a homestead interest or estate in the 640 acres of land in controversy."

We believe this quotation carries within itself a complete refutation of the assertion that the court's statement was in any sense prejudicial. Aside from this, however, there was no objection to the statement at the time or later when the court might have removed all doubt arising from any possible ambiguity in the language he had employed; which no doubt he would readily have done. The point is obviously an afterthought.

After Holden had testified that during the term of court at which the foreclosure judgment was rendered McCollum had stated to him that "he would give me 90 days" to raise the money "and that if I did not get the money that after the judgment he would give me 90 days again," the court declined to permit Holden to testify "that he understood from such conversation that the case would be continued to the next term of court." The jury having found in answer to the twelfth issue that McCollum did not make such statement, it was wholly immaterial what interpretation Holden would testify he placed upon it.

Holden was not permitted to testify that after the property was sold J. W. Gibbons in a conversation at Richland Springs "said if I didn't try to hold it (the homestead) I would be a fool." We cannot see that such statement, if made, would throw any light upon any material issue in the case. Holden had already testified to statements made by J. W. Gibbons prior to the foreclosure judgment, and the jury, answering the third issue, found that such statements were not made. The excluded statement, made after the rights of the parties had become fixed, could only become material as an admission against interest. We cannot see that it was susceptible of such construction.

The same is true of this excluded statement asserted to have been made by J. W. Gibbons at the same time: "We could have settled this if it had not been for Sam McCollum."

Also immaterial to any issue in the case was the excluded testimony of Holden that he requested J. W. Gibbons after the sale to reconvey to him the 200 acres, and that of Mrs. Holden that she agreed "to let Gibbons have the 440 acres." The record does not disclose when this last asserted agreement was made by Mrs. Holden. If before the judgment, it was incumbent upon appellants to show that fact. We assume Mrs. Holden was testifying to some offer on her part after the judgment, especially so since there was no pleading which would authorize a finding and no issue requested having relation to such agreement.

Exclusion of Mrs. Holden's testimony to the effect that she did not authorize Holden to employ Adkins was immaterial in view of the fact that his authority vel non to file the answer for her was immaterial as noted above.

The answer of Baker was excluded to this question by appellants' attorney on cross-examination: "And didn't you tell me the reason you didn't do that was the reason that you decided that nobody would be fool enough not to raise that question if they sought to sell his homestead under the deed of trust?"

This question was in relation to a conversation between the witness and questioning attorney. Assuming an affirmative answer, its only materiality was in its effect as impeaching Baker's other testimony. We cannot see that it would have any effect in this regard. Baker had denied that he knew Holden lived upon the land or that he had promised Holden to exclude any part of the 640 acres from the trust deed. The above quotation from his opinion on the title clearly shows that he was putting his client upon notice that he might be getting a valid lien upon only 440 acres. Absent a promise or some representation to Holden that he would exclude the homestead, there was no legal obligation on his part to do so, and his reasons for not so doing were wholly immaterial. They shed no light upon whether his denial of Holden's testimony on the subject were true.

The same is true of his excluded answer to the question: "And you knew that he (W. H. Gibbons) did not lend money on homesteads." His only employment was to examine the title and he performed his full duty as regards any homestead question, by the notice of its possible existence conveyed by the above quotation from his opinion.

On cross-examination Adkins testified that the reason he did not examine

the trust deed was because he "had no desire to trump up a defense." He had previously testified that Holden told him he had no defense and only wanted a continuance in order to raise the money. Following his quoted testimony, he was asked (and answer precluded) this question: "You think that would be trumping up a defense?" We regard it unnecessary to discuss the issue thus presented further than to say that it could have no bearing upon anything other than whether Adkins was diligent in representing Holden and wife. As already pointed out, that was not a material issue in the case.

The trial court's judgment is affirmed.