**PARR et al. v. RATISSEAU.**

No. 12162.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 10, 1951.

Rehearing Denied Feb. 7, 1951.

Fischer, Wood, Burney & Glass, Corpus Christi, Spencer & Cabaniss, Rockport, for appellants.

Vinson, Elkins & Weems, Tarlton Morrow, and C. M. Hightower, all of Houston, for appellee.

POPE, Justice.

This is a suit in trespass to try title which was tried before a jury, and concerns the rights of cotenants with relation to a claim of adverse possession by a stranger.

On September 27, 1948, Mrs. L. A. Parr, T. S. Hall, Mamie B. Walker and husband, Elaine B. Hart and husband, Emory Spen-

cer and Walter R. Taber, sued appellee, Thelma Ratisseau, a widow, George W. Graham and Placid Oil Company, for the recovery of 83 acres of land fronting on Copano Bay in Aransas County. Plaintiffs Spencer, Taber and Hall, before the trial, took a non-suit, but Ratisseau, by cross-action in trespass to try title to the same property named all the original plaintiffs, including Spencer, Taber and Hall as cross-defendants.

All plaintiffs non-suited as to Graham and the Oil Company. Appellee, Ratisseau, relied upon the ten and five-year statute of limitations and the jury found that she had matured title under the ten-year statute. The judgment on the verdict awarded her approximately fifteen acres described in the judgment and adjudged that she recover nothing as to the remaining portion of the 83-acre tract. This appeal concerns only the fifteen acres here discussed.

Appellants are the plaintiffs and the cross-defendants below and they urge that there was no evidence and insufficient evidence to support appellee's recovery under the ten-year limitation statute, that the trial court erred in failing to submit an issue inquiring whether Ratisseau or her husband gave actual notice of their adverse possession to the cotenants, and that the form of the special issue on the ten-year limitation statute was multifarious and confusing, since the inquiry was made to several separate tracts in a single issue.

The entire 83-acre tract was originally owned by the appellants and appellee's predecessor as cotenants, but in July, 1936, Thelma Ratisseau and her husband (now deceased) purchased from Mattie A. Funston and husband a divided four and one-half acres of land described in the deed by metes and bounds. This was a part of the 83-acre tract. The deed was promptly filed and recorded and the Ratisseau family immediately moved upon what they mistakenly believed to be the four and one-half acres they had purchased. During the latter part of 1936, or the early part of 1937, an owner who adjoined the larger 83-acre tract erected a fence along his line, during which operation the Ratisseaus discovered that the metes and bounds' description in

their deed covered property to the west of the tract they were occupying and living upon.

Appellee, Ratisseau, in her cross-action, claimed fifteen acres by reason of adverse possession for ten years. This fifteen-acre-tract was designated in the pleadings and during the trial as Tract 1. It in turn was made up of four smaller tracts, designated below as Tracts 2, 3, 4 and 5. Tract 2 was the property on the northwest corner of the fifteen-acre tract, fronting on Copano Bay, and was that property described by metes and bounds in the Funston deed to Ratisseau. Contiguous to Tract 2, on the east and also fronting on Copano Bay, was Tract 3. Tract 4 was east of and contiguous to Tract 3, and also fronted on the bay, and was the tract originally and mistakenly thought to be the property described in the deed. This Tract 4 was on the northeast corner of the fifteen-acre tract. Tract 5 was contiguous to the south on the land side of Tracts 3 and 4. Hence there were four tracts composing the larger tract of fifteen acres, involved in this appeal.

Without undertaking to detail all of the documentary and testimonial evidence, we are of the opinion that there was sufficient evidence to support the finding of adverse possession as to all of the fifteen-acre tract. After discovering, in the early part of 1937, that the home and other buildings were not located on the property included within the metes and bounds of the Funston deed, the Ratisseaus commenced to claim all of the fifteen-acre tract. The jury answered an issue, not here under attack, finding that after discovering the improvements were not on the tract covered by the Funston deed, the Ratisseaus did not surrender their claim to the property covered by that Funston deed. After discovering the mistake, the Ratisseaus ran fences that enclosed the entire fifteen acres and maintained these fences thereafter. These fences closed all gaps and resulted in Tracts 2 and 3 being fenced in one enclosure and Tracts 4 and 5 in another enclosure, but all four tracts were surrounded by an outside fence and the bay and together composed Tract 1. Within in the enclosure for Tracts 4 and 5 were

improvements consisting of the Ratisseau home, several fishing shacks for rental to the public, a windmill, chicken yard, and pipe line. Entrance to Tracts 2 and 3 was through a locked gate, the key to which was at the Ratisseau home. The Ratisseau live stock was turned out upon the fifteen acres.

Mr. Ratisseau, during his lifetime, rendered and paid taxes only on the four and a half acre tract covered by the deed, and in his tax rendition made an affidavit that the inventory contained all his taxable property. Also, as late as 1945 he designated this tract as his homestead. Mrs. Ratisseau, after her husband's death, only rendered the four and one-half acres. On the strength of these matters, appellants contend that there is insufficient evidence of a claim by Mr. Ratisseau, which would be controlling as to the nature of the claim. Eldridge v. Parish, 6 Tex.Civ. App. 35, 25 S.W. 49. These facts were properly admitted for consideration by the jury as circumstance against Ratisseau's claimed limitation title, but are not controlling. They made out the fact issue which was decided by the jury. Lynch Davidson & Co. v. Beasley, Tex.Civ.App., 128 S.W.2d 877; Manning v. Standard Oil Co. of Kansas, Tex.Civ.App., 67 S.W.2d 919; White v. Eavenson, 46 Tex.Civ.App. 158, 101 S.W. 1029.

The fact that the Ratisseaus paid on the vendor's lien for several years did not prevent adverse possession from maturing. Converse v. Ringer, 6 Tex.Civ.App. 51, 24 S.W. 705; 2 C.J.S., Adverse Possession, § 122; 2 Tex.Jur., Adverse Possession, § 60.

Appellants next contend that the court should have submitted their requested special issue inquiring whether actual notice of the Ratisseau adverse possession was ever given the other parties to the suit. It is urged that they were cotenants and that actual notice was necessary. Entry upon real property by a cotenant claiming adverse possession against his cotenants does not become the foundation of limitation title until the cotenants are given notice of the repudiation of their rights, or unless the adverse claim was of such unequivocal notoriety as to charge them with notice. Possession is presumed to be in right of the common title unless it clearly appears that the possessor has repudiated the title of his cotenants and is holding adversely to them. Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81; 1 Am.Jur., Adverse Possession, § 56. But the rule is different in the instance of a conveyance made to a stranger to the cotenancy, purporting to pass a divided interest. Where one cotenant conveys the entire premises to a third person, who enters into possession under a recorded deed, claiming adverse possession to the whole, the possession and the record of the deed constitute constructive notice that the stranger is claiming all that the deed purports to convey. This effects an ouster of the cotenants and after the expiration of the statutory period will bar the right of the cotenants to recover. Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352; McBurney v. Knox, Tex.Com.App., 273 S.W. 819, 821; Welch v. Armstrong, Tex.Civ.App., 62 S. W.2d 335, 338; 4 Thompson on Real Property, § 1898 (Perm.Ed.); 1 Am.Jur., Adverse Possession, § 70.

And the Texas authorities apply the same reasoning to possession by a stranger under a deed to a specifically described parcel out of a larger tract owned by cotenants. Martinez v. Bruni, Tex. Com.App., 235 S.W. 549; Toole v. Renfro, 52 Tex.Civ.App. 482, 114 S.W. 450; Morgan v. White, 50 Tex.Civ.App. 318, 110 S. W. 491, 494; Puckett v. McDaniel, 8 Tex. Civ.App. 630, 28 S.W. 360; De Leon v. McMurray, 5 Tex.Civ.App. 280, 23 S.W. 1038; 27 A.L.R. 24. In the instant case, the Ratisseaus received their deed to a divided parcel which was specifically described by metes and bounds, recorded their deed, and entered into actual possession, in the manner and for the length of time required to mature a limitation title, insofar as the four and one-half acre tract was concerned.

It appears therefore that the recorded deed, followed by possession, supplied the necessary notice to the cotenants that the Ratisseaus claimed the four and one-half

acres as strangers to the cotenancy rather than as cotenants.

But the Ratisseaus also actually possessed property beyond the description of their deed in such a manner as to mature title to the additional property under the ten-year statute of limitations according to the jury verdict. Does the fact that they possessed property described in the deed and also property beyond the limits of the deed change the rule and thereby require them to give actual notice of adverse possession to the cotenants?

■ Ordinarily possession under a deed is referable to the deed, is presumed to be in conformity with it, and is confined to the limits described by the deed. This is the rule in the case of a grantor who has conveyed only such title as he actually owns. In such a case, it is not the deed which supplies the notice as to the additional land occupied, nor is it the deed coupled with possession. Actual possession of additional land of such character as of itself will give notice of an exclusive adverse possession will mature into title after the statutory period. McCall v. Grogan-Cochran Lumber Co., 143 Tex. 490, 186 S.W.2d 677; Harmon v. Overton Refining Co., 130 Tex. 365, 109 S.W.2d 457. Actual possession provides the notice in such cases.

Should a different rule obtain in this case where the grantor conveyed something different from and more than he owned followed by possession still beyond the deed? We think not, but believe the same rule applies as to possession of the additional land, beyond the limits of the deed, whether a deed describes property that the grantor actually owns or whether a deed describes more than the grantor owns.

■ Since actual possession may supply notice of adverse possession as to additional property beyond that described in a deed executed by a grantor who conveys only what he owns; a fortiori actual possession may supply notice of adverse possession as to additional property beyond that described in a deed by a grantor who conveyed a divided interest when he only owned an undivided interest.

As to the additional property invaded by the Ratisseaus, no actual notice was necessary. Hence, as to the four and a half acres, the deed which described a divided parcel, followed by actual possession, constituted notice to the cotenants; and as to the additional acreage occupied, actual possession alone supplied the notice. In neither instance was actual notice necessary.

■ Ratisseau, as Funston's grantee to a specifically described tract, did not enter as a cotenant and the true owners of the property were charged with knowledge of this fact. When they found Ratisseau in actual pedal possession of their property, which lay both within or without the bounds of the Funston deed, they could not assume that Ratisseau was occupying the land as a cotenant. His possession was notice to them of his hostile claim.

The final matter for discussion concerns the manner in which the trial court submitted the special issues as to the ten-year statute of limitations. The court first submitted this issue: "Do you find from a preponderance of the evidence that G. A. Ratisseau and wife, Thelma Ratisseau, during the lifetime of G. A. Ratisseau, and Thelma Ratisseau after the death of her husband, G. A. Ratisseau, in person held peaceable and adverse possession of the first tract of land described in Exhibit 'A' attached to defendant's First Amended Original Answer, it being the approximate 15 acres shown as Tracts 2, 3, 4 and 5 on Exhibit 8 in evidence, cultivating, using, or enjoying the same, for a period of ten consecutive years prior to September 27, 1948?"

The jury answered this issue in the affirmative.

Other issues were submitted, conditioned upon a negative answer to the above special issue. These other issues inquired separately as to limitations to each of the smaller tracts composing the larger fifteen-acre tract. They were not answered by reason of the affirmative answer to the first issue.

Counsel objected to the issue on the grounds that it was multifarious and confusing, in that the evidence with reference to each tract was different, and to group all

the tracts together in one issue required the jury to pass on separate and distinct fact situations with reference to each tract, and was calculated to cause the jury to make an affirmative answer in the event they believed that any one or more of the tracts were held adversely, even though they might be in doubt about the remaining tracts or even believed that such remaining tracts were not adversely held. Another objection was that the cross-defendants were entitled to have a separate finding on each tract.

Appellee, Ratisseau, pleaded limitation title to all of Tract 1, describing it by metes and bounds. She then pleaded limitation title to each of the smaller parcels composing Tract 1, and described them separately by metes and bounds. The nature of the pedal possession, while differing as to some of the tracts, was all related and tied to and grew out of the occupancy of the rural home and fishing camp with its surrounding property. Fencing a larger tract into smaller tracts, while making for different factual situations as to each plot, is yet one of the strongest circumstances of an adverse title to the entire property. Both from the pleadings and the nature of the possession, Tract 1 was an integrated unit.

Nor was the nature of the claim so different between the smaller parcels as to require separate submission. The special issue under attack was one submitting adverse possession under the ten-year statute. It was applicable to all of the contiguous tracts. The issue did not inquire as to any claim under a deed in support of the five-year limitations statute. As discussed above, the deed to one of the parcels was significant only insofar as it affected the matter of actual notice to the cotenants. It is undisputed in the facts that the deed was promptly filed, recorded and followed by actual possession, and these matters constituted an ouster independent of actual notice. But the nature and sufficiency of the adverse possession were matters common to each of the tracts composing the integrated enclosure. The special issue related only to matters which would make the possession adverse and, following the

ouster, it was a single possession which matured into title.

Nor do we believe the jurors were confused in their interpretation of the meaning of the issue. The issue should not be considered in isolation. The jurors had the benefit of the pleadings which had been read to them and the evidence presented at the trial before the submission of the charge. They also had the benefit of the entire charge and the argument of counsel explaining the issues. From these the jury was fully advised of the meaning of the issue under attack. The issue itself plainly inquires about all of the fifteen-acre tract. It was followed by questions relating to its parts, in the event they found negatively as to the prior issue.

This is not a case where one answer will leave the losing party in doubt as to which of several tracts the jury meant. The losing party has the right to know with certainty the very facts found by the jury which constitute the basis of the judgment against him. That test is met by the question and the answer here concerned, because the answer relates to the entire fifteen acres. Gulf States Utilities Co. v. Wooldridge, Tex.Civ.App., 90 S.W.2d 325, contra: C. V. Hill & Co. v. Fricke, Tex.Civ.App., 135 S.W.2d 582, 586; McCombs v. Red, Tex.Civ.App., 86 S.W.2d 648. We do not believe the issue led to any confusion and none has been pointed out in the briefs. Texas Employers' Ins. Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147.

The submission of various facts giving rise to the ten-year statute of limitations, together with appropriate explanations, has been approved as against the objection of multifariousness and the request for finer issues. Davis v. Dowlen, Tex.Civ.App., 136 S.W.2d 900; Reed v. Magnolia Petroleum Co., Tex.Civ.App., 57 S.W.2d 359. For like reasons it is believed that further splitting of issues along geographic lines should not be required, unless it is demonstrated that the failure to do so will create confusion either in the deliberations or in the answers. Cf. Wilkinson v. Gordon, Tex.Civ.App., 123 S.W.2d 961;

Atkins v. Dodds, Tex.Civ.App., 121 S.W. 2d 1010; Holden v. Gibbons, Tex.Civ.App., 101 S.W.2d 837, 840; Southern Surety Co. v. Solomon, Tex.Civ.App., 4 S.W.2d 599.

The judgment is affirmed.