UNITED STATES of America,
Plaintiff-Appellant,

v.

Adria Smith STANTON et al.,
Defendants-Appellees.

No. 73–2266.

United States Court of Appeals,
Fifth Circuit.

June 10, 1974.

Rehearing Denied July 17, 1974.

Nancy L. James, Asst. U. S. Atty., Roby Hadden, U. S. Atty., Tyler, Tex., Eva R. Datz, Atty., Wallace H. Johnson, Asst. Atty. Gen., Jacques B. Gelin, Atty., Appellate Sec., Dept. of Justice, Land & Natural Resources Div., Washington, D. C., for plaintiff-appellant.

W. G. Walley, Jr., Beaumont, Tex., for defendants-appellees.

Before DYER, MORGAN and RO-NEY, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

In 1971, the United States filed suit to quiet title on a 77-acre tract in the

Sabine National Forest in Texas.[1] The United States claimed title to the entire tract under a general warranty deed dated December 27, 1935, and by adverse possession under the three, five, ten and 25-year statutes of Texas (Vernon's Ann.Civ.St. Arts. 5507, 5509, 5510, 5519). The district court held the United States to be owner of not more than an undivided $\frac{9}{14}$ interest in the land. The United States appeals that decision. We reverse, finding the United States to be the absolute owner of the entire tract.

This action arose because of the following occurrences: In 1968, Adria Smith Stanton and her husband moved a mobile home onto a portion of the property in question, claiming an undivided $\frac{5}{14}$ interest. The Stantons immediately brought an action for partition against the United States, but it was dismissed upon a motion based on sovereign immunity. Stanton v. United States, 434 F.2d 1273 (5th Cir. 1970). Nevertheless, the Stantons remained on the land, causing the United States to bring this action to quiet title.

The Stantons base their claim on occurrences beginning in the 19th Century. In 1887, John E. Smith purchased the tract in question. Two years later, Smith's wife Laura died intestate, and under Texas law, her one-half interest in the land passed to their two children, Anna and Obie. Lynch v. Lynch, 130 S. W. 461 (Tex.Civ.App.1910). Smith then remarried and fathered five additional children who later inherited, along with Anna and Obie, two thirds of Smith's one-half interest in the tract.[2] Slavin v. Greever, 209 S.W. 479 (Tex.Civ.App.— Amarillo, 1919). At this point, Anna and Obie had accumulated title to $\frac{9}{14}$ of the land.[3] In 1910, Obie and Anna executed a deed. to L. E. King, purportedly conveying full title to the tract. King

transferred the land to Temple Lumber Company in 1918 through a deed for the entire fee. Temple, in 1935, deeded the tract to the United States, the ownership of which was not challenged until 1968. The Stantons now claim an undivided $\frac{5}{14}$ interest in the land based on Adria Smith Stanton's being a daughter of John E. Smith's second marriage.

The district court found that under the laws of Texas the possessory acts by the United States and its predecessor in interest were not sufficient to establish absolute title to the tract. We disagree.

There are at least two theories on which we can base our decision: (1) purported transfer by a co-tenant of the entire fee to a stranger, and (2) adverse possession under the laws of Texas. The facts set out both above and below strongly support both theories.

■ It is the law in Texas that a conveyance by one co-tenant to a stranger purporting to convey the entire common property, when followed by actual adverse possession, amounts to a disseizin of the non-participating co-tenants; and the recording of such conveyance followed by possession, constitutes notice of the repudiation. Parr v. Ratisseau, 236 S.W.2d 503, 506 (Tex.Civ.App.1971).

As has been stated, two of the co-tenants, Anna and Obie, executed a deed conveying the entire tract in 1910 to King. In 1918, the entire tract was deeded by King to Temple Lumber Company, which, by general warranty deed, conveyed it to the United States in 1935. At that point, the office of the Attorney General checked the title and found it in order. The trial record indicates that none of Smith's heirs set foot on the land after 1913 until 1968.

■ Were the acts of the United States and its predecessors in title sufficient to satisfy the prerequisites of ad-

---

1. The district court's jurisdiction was based on 28 U.S.C. §§ 1345 and 1655.

2. The other one-third of his one-half interest went to John Smith's then living wife. Scales v. Marshall, 60 S.W. 336 (Tex.Civ. App.1901).

3. Anna and Obie's original one-half interest in the land inherited from their mother added to the one-seventh interest they inherited from their father equals $\frac{9}{14}$ths.

verse possession under the co-tenant theory? There is no doubt that the acts were sufficient.[4] Art. 5515 of the Revised Civil Statutes of Texas, 1925, states:

'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.

When Temple Lumber Company, one of the predecessors in title, purchased the land by recorded deed in 1922, it paid all taxes due, cut timber and otherwise exercised ownership. In 1935, Temple conveyed the tract to the United States, reserving certain mineral rights and the right to cut timber for a 10-year period.

Following the conveyance to the United States, the Forest Service conducted timber stand improvement and the tract was "prescribe burned" twice to eliminate underbrush, briars, bushes and other matter that create litter on the ground attracting destructive insects and generally depreciating the land. About 1935, telephone lines connecting various Forest Service fire towers were put up along existing roads. A service road was constructed in 1936, and by 1966 its annual traffic flow was more than 10,000 vehicles. Also in 1936, the United States leased a portion of the land for a 5-year period to be used for grazing and farming. The Texas Highway Department requested and received permission to build a road across the land, which was completed in 1949. A portion of the land was again leased for grazing and farming from 1951 to 1964. Timber sales by the United States in 1953 were publicly advertised. Advertised sales again took place in 1965 and 1967. The Forest Service posted notices of ownership along both roads and the entire western boundary of the tract adjacent to private property.

During the 1960's, construction of the Toledo Bend Reservoir caused inundation of one-third of the tract. A memorandum of understanding concerning this flooding was entered into by the Forest Service and the Sabine River Authority prior to this inundation.

For what reason then did the trial court refuse to acknowledge the United States' right to absolute ownership of the land? In certain special use permits issued by the Forest Service in 1949 and 1955, a clause was included, to-wit: "This permit is subject to all valid claims." The trial court determined this clause to be an acknowledgement by the United States of the Stanton's interest in the land. We find such a determination to be untenable for several reasons.

Under Texas law recognition of another's interest in land sufficient to bar adverse possession must not only be clear and unequivocal, but also such recognition must be specific as to whose interest is acknowledged. Young v. Williams, 80 S.W.2d 399 (Tex.Civ.App. 1938). Evidence at trial showed the clause in question was part of a standard printed form used by the Forest Service for all use permits. Furthermore, the clause could be considered to have referred to the mineral rights reserved by Temple Lumber Company in 1935. There is no evidence that indicates any specific acknowledgement by the United States of any other interest. Without such a specific acknowledgement, no bar to adverse possession occurs. Young, supra.

Even if, however, such an acknowledgement could be found, the United States would still be the rightful absolute owner of the land. Texas has at least four statutes which convey title by adverse possession, any of which can be applied to the facts before this court.

The 25-year statute states:

Art. 5519.

No person who has a right of action for the recovery of real estate shall be permitted to maintain an action therefor against any person having peacea-

---

4. Ortiz v. State, 86 S.W. 45, 46 (Tex.Civ.App.1905) aff'd. 99 Tex. 475, 90 S.W. 1084 (1906).

ble and adverse possession of such real estate for a period of twenty-five years prior to the filing of such action, under claim of right, in good faith, under a deed or deeds, or any instrument or instruments, purporting to convey the same, which deed or deeds or instrument or instruments purporting to convey the same have been recorded in the deed records of the county in which the real estate or a part thereof is situated; and one so holding and claiming such real estate under such claim of title and possession shall be held to have a good marketable title thereto, and on proof of the above facts shall be held to have established title by limitation to such real estate regardless of coverture, minority, insanity or other disability in the adverse claimant, or any person under whom such adverse claimant claims, existing at the time of the accrual of the cause of action, or at any time thereafter. Such peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them. The adverse possession of any part of such real estate shall extend to and be held to include all of the property described in such deed or instru-

ment conveying or purporting to convey, under which entry was made upon such land or any part thereof, and by instrument purporting to convey shall be meant any instrument in the form of a deed or which contains language showing an intention to convey even though such instrument, for want of proper execution or for other cause is void on its face or in fact.

The facts previously set forth demonstrate the prerequisites of Art. 5519 to have been met, the United States had possessed the land with the title properly recorded for more than 33 years prior to the entry of the Stantons.[5] The predecessors in title and possession to the United States had been there for more than 25 years.

The 10-year statute, Article 5510, is equally applicable, only restricting itself to tracts of not more than 160 acres.[6] Texas has two other adverse possession statutes which need not be discussed here, the question having been decided.

It is our holding that the United States is the exclusive owner of the entire undivided interest in the 77 acres. The judgment of the district court is

Reversed and remanded for entry of an order in accordance with this opinion.

5. Vernon's Ann.Civ.St. Arts. 5510, 5519. We find it unnecessary to consider the Texas three and five year statutes (Articles 5507 and 5509) because of the result of application of the ten and 25-year statutes.

6. Vernon's Ann.Civ.St. Art. 5510 states:
Any person who has the right of action for the recovery of lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward. The peaceable and adverse possession contemplated in this article, as against the person having right of action, shall be construed to embrace not more than one hundred and sixty acres, including the improvements or the number of acres actually enclosed, should the same exceed one hundred and sixty acres; but when such possession is taken and held under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered, such peaceable possession shall be construed to be co-extensive with the boundaries specified in such instrument.