EARL HUNTER, Respondent, v. HARRY HUNTER, JR., Appellant, No. 41598—237 S. W. (2d) 100.

Division One, February 12, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, March 12, 1951.

*Barksdale, Abbott & Thies, Clarence M. Barksdale* and *Victor A. Wallace* for appellant.

*Joseph M. Walsh* and *J. E. Patton* for respondent.

[101] LOZIER, C.—This appeal is here because construction of the state constitution and title to real estate are both involved. The nature of the judgment appealed from and the issues can be better stated if the facts are first reviewed. These facts were either stipulated or were uncontroverted.

. Appellant Harry Hunter, Jr. and respondent Earl Hunter are the sons and only children of Harry Hunter, Sr. and Nellie Hunter. Respondent never married and has no children. In 1919, respondent was convicted of first degree murder and sentenced to life imprisonment in the penitentiary. He was confined there until June 27, 1946. On that date, the Governor commuted the life sentence to a "term ending" that day "without the benefit of the three-fourths law." The commutation was conditioned upon respondent's compliance with certain conditions until April 21, 1951, "failing in any of which, or upon the order of the Governor at any time, he may be arrested and returned to the penitentiary, without a hearing, there to serve out the remainder of his sentence."

Harry Hunter, Sr. died intestate in 1930 and appellant was appointed administrator of the father's estate. It consisted solely of personal property. A residence had been owned by him and his wife by the entirety. On the application form appellant listed the widow, Nellie Hunter, and the two sons as the "heirs now in being." The estate was subsequently ordered distributed, $1457.33 to each of the three.

Appellant, upon his own application, Nellie Hunter having renounced the right, was appointed administrator of the estate of "Earl Hunter, deceased." The application form recited that Earl Hunter had "entered the Missouri State Penitentiary for the rest of his natural life." The file wrapper showed the estate as that of "Earl Hunter, civilly dead." The inventory showed the $1457.33 as being the only property of said "deceased." As administrator of the estate of "Earl Hunter, deceased," appellant filed in the father's estate a receipt for respondent's distributive share of the father's estate. Thereafter, the amount available for distribution ($1294.86) in respondent's estate was distributed to the mother and appellant, one half ($647.43) to each.

Nellie Hunter died intestate in 1937 and appellant was appointed administrator of her estate. On the application form he listed himself as her only "heir now in being." The inventory showed $6276.90 in personal property and $1080 in real estate, the residence property. In the settlement of the mother's estate, $5501.72 was paid to appellant as "sole heir." He also received personal property worth $225 which was not included in the inventory in the mother's estate. Two weeks after the mother's death, appellant moved to the residence property and with his family has since lived there. He paid the taxes and the insurance costs and made improvements and repairs.

On January 6, 1948, respondent filed this action in equity. The first count was for an accounting for his distributive share of the father's estate and for one-half interest of the mother's estate and of her other personal property not inventoried. The second count was for partition of the residence property. At the close of all the evidence, the trial court overruled appellant's motion to dismiss respondent's petition; required appellant to account and found for respondent for $4158.70 on the first count; and held that respondent was [102] the owner of an undivided one-half interest in the residence and ordered a partition sale thereof.

Appellant challenges the correctness of these rulings of the trial court: that the "civil death" statute (Sec. 9225, Mo. RS 1939 and Mo. RSA, now Sec. 222.010, Mo. RS 1949) and the statute providing for administration of the estate of a life convict (Sec. 9228, Mo. RS 1939 and Mo. RSA, repealed, Laws 1945, p. 1333) violated certain constitutional provisions (Art. II, Sec. 13, 1875 Cons.; Art. I, Sec. 30, 1945 Cons.) and conflicted with other statutory provisions (Sec. 4858, Mo. RS 1939 and Mo. RSA, now Sec. 556.300, Mo. RS 1949); that appellant became a constructive trustee and was liable to respondent for respondent's share of the father's estate and for one half of the mother's estate.; that respondent inherited an undivided one-half interest in the residence property; that the probate proceedings could be collaterally attacked; that respondent was entitled to bring the action; and that the cause of action was not barred by statutes of limitations.

We have considered all of these matters and find that it is necessary to rule but one. As it appears that respondent's claims were barred by the statutes of limitations pleaded by appellant, we will assume, but not decide, that the trial court correctly ruled all of the other issues.

Respondent's suit was filed January 6, 1948. This was over 16 years after the final settlement in his father's estate, over 15 years after the final settlement in respondent's estate and over 9 years after the final settlement in his mother's estate. All such estates involved personalty only. Any cause of action which respondent may have had resulting from these proceedings, respectively, accrued over 5 years prior to January 6, 1948, and was barred by the provisions of Sec. 1014, Mo. RS 1939 and Mo. RSA, now Sec. 516.120, Mo. RS 1949.

Respondent's action was filed over 10 years after his mother's death, which occurred on September 10, 1937. Assuming but not deciding that he inherited from her an undivided one-half interest in the residence property, respondent's cause of action therefor accrued more than 10 years prior to January 6, 1948, and he did not assert his claim within the period prescribed by Sec. 1002, Mo. RS 1939 and Mo. RSA, now Sec. 516.010, Mo. RS 1949.

■ Assuming that appellant and respondent owned the residence as tenants in common, the general rule is that such a tenant or such an heir presumptively holds possession for his cotenants or coheirs. See Mann v. Mann, 353 Mo. 619, 183 SW 2d 557; and Humphreys v. Welling, 341 Mo. 1198, 111 SW 2d 123. But under certain circumstances such a tenant in possession may hold adversely to his cotenants or coheirs and, after such adverse possession for the statutory period, may invoke the statute to defeat the claims of his cotenants or coheirs. Hart v. Eldred, 264 Mo. 148, 174 SW 380; and Nickey v. Leader, 235 Mo. 30, 138 SW 18.

Appellant's possession of the residence was actual, visible, exclusive, hostile and continuous for more than 10 years. after the mother's death. See Eaton v. Curtis, 319 Mo. 660, 4 SW 2d 819. His actions were "totally irreconcilable with a recognition of the rights of his cotenant," and it is not material that respondent had actual knowledge of appellant's actions. Mann v. Mann, supra. His "claim of right" was based upon respondent's "civil death" and the probate administration of respondent's estate. In the mother's estate appellant described himself as her only "heir now in being." He receipted for her personal property as her "sole heir." Compare Buck v. McMinn, (Mo. Sup.) 300 SW 497. Compare also DeLeon v. McMurray, 5 Tex. Civ. App. 280, 23 SW 1038, where it was held that a conveyance by cotenants in which they described themselves as "sole heirs" necessarily implied that such grantors' possession was hostile to the other cotenants. His possession of the residence was clearly coupled with "an unequivocal claim of ownership." Bell v. Barrett, (Mo. Sup.) 76 SW 2d 394, and Buck v. McMinn, supra.

Respondent contends the 10 year limitation is inapplicable to partition suits, citing [103] Armor v. Frey, 253 Mo. 447, 161 SW 829. However, in that case, and in the cases cited therein, possession by a tenant adverse to his cotenants was not involved.

■ It was not until June, 1946, that respondent's life sentence was commuted to one for years, such commutation to become final in April, 1951, upon respondent's compliance with certain conditions. Assuming without deciding that respondent's "civil disabilities" were removed in June, 1946, and that he was entitled to file his suit immediately upon his release from confinement, the removal of his disability to sue did not retroactively change the effect of the running of the statutes of limitations. When he filed his suit in January, 1948, these statutes had already run against both of his alleged causes of action.

Respondent asserts that his causes of action did not accrue until June 27, 1946, the date of the commutation of his life sentence, and that the statutes of limitations did not start to run until that date. This is not the law. A cause of action accrues, and limitations thereon begin to run, when the right to sue arises. 34 Am. Jur., Lim.

of Actions, Sec. 113, p. 92; and 54 CJS, Lim. of Actions, Secs. 108 and 109, pp. 9 and 11, citing many Missouri cases. We have studied the cases cited by respondent and find that they all restate this well-established rule. See Coleman v. Kansas City, 353 Mo. 150, 182 SW 2d 74.

The statutes of limitations were not tolled while respondent was imprisoned. Secs. 1004 and 1020, supra, toll the statutes for one imprisoned on a criminal charge *or* in execution under a sentence *for a term less than life.* There is no merit in respondent's suggestion that he came within the exception, "imprisonment on a criminal charge." In both Secs. 1004 and 1020, this exception is disjunctively joined with imprisonment in execution of a sentence for a less-than-life term. See Hyde v. Nelson, 287 Mo. 130, 229 SW 200. Obviously, the legislature did not intend that imprisonment under a life sentence be included in the words, "on a criminal charge."

Respondent asserts: that the conditions of the "three-fourths rule" (Sec. 9086, Mo. RS 1939 and Mo. RSA, now Sec. 217.370, Mo. RS 1949) must be read into every judgment of conviction (Ex Parte Rody, 348 Mo. 1, 152 SW 2d 657, and Ex Parte Carney, 343 Mo. 556, 122 SW 2d 888); that the language of that statute is applicable to all convicts, and that the rule has been administratively applied to life convicts; that, therefore, his sentence was actually one for a term of years.

The three-fourths rule itself is based upon, and its application arises out of, the prisoner's conduct *after confinement* under and *in execution of a sentence.* While application of the rule may result in reduction in the sentence, neither the rule's existence nor its application changes the *original sentence* under which the convict was confined. (Between 1865 and 1879, the legislature expressly made the three-fourths rule applicable to life convicts after 15 years imprisonment. This provision, 1865-66 Laws, p. 20, was eliminated in the 1879 revision. See also Ex Parte Collins, 94 Mo. 22, 6 SW 345.) Furthermore, respondent's release from prison was under a commutation of sentence under Art. IV, Sec. 7, 1945 Cons., and was expressly "without benefits of the three-fourths law." See State v. Montgomery, (Mo. Sup.) 223 SW 2d 463, and State ex rel. Stewart v. Blair, 356 Mo. 790, 203 SW 2d 716. At trial time, respondent had complied with the conditions of the commutation. If he continues to do so until April 21, 1951, the commuted term-for-years sentence will have been served.

Sec. 9228, supra, providing for administration of the estate of a life convict as if he were naturally dead, was repealed and Sec. 9229, Mo. RS 1939 and Mo. RSA, now Sec. 460.010, Mo. RS 1949, providing for circuit court trusteeship of the estate of the term-less-than-life convict, was amended to include the estate of a life convict. Laws 1945, p. 1333. However, Secs. 1004 and 1020, supra, the tolling stat-

806

utes, were [104] not changed to extend the exception to the life convict. Nor has this extension been made by any subsequent General Assembly. This failure to create such exception is indicative of the legislative intent that the benefits of the tolling statutes should not be extended to the convict confined under a life sentence.

"Statutes of limitations are favored in the law and cannot be avoided unless the party seeking to do so brings himself strictly within some exception." Shelby County v. Bragg, 135 Mo. 291, 36 SW 600. Such exceptions "are strictly construed and are not enlarged by the courts upon considerations of apparent hardship." Woodruff v. Shores, 354 Mo. 742, 190 SW 2d 994. See 34 Am. Jur., Lim. of Actions, Sec. 192, p. 155. Such exceptions are matters of public policy for determination by the General Assembly. The language of the exception here is plain, and this court cannot create an exception in favor of the convict imprisoned under a life sentence where the legislature has clearly not created such an exception. See 54 CJS, Lim. of Actions, Sec. 216, p. 250; 34 Am. Jur., Lim. of Actions, Sec. 186, p. 150; and Wood, Limitations, 4th Ed., Sec. 11b, p. 55.

Therefore, from the times that respondent's alleged causes of action, respectively, accrued, respondent's disability to assert his claims was one for which no exception had been made, and for which the running of the statutes had not been suspended. In June, 1946, when he was released from the penitentiary, the 5 year statute had already barred his claims arising out of all three probate proceedings. His claim as to the residence property was barred in September, 1946, 10 years after his mother's death, and 4 months before he filed his suit.

Probate of respondent's estate was suggested to appellant by employees in the office of the clerk of the probate court; and in all 3 estates, appellant acted upon the advice of such employees and all documents signed by him were on printed forms prepared by them. Other than the improper, but perhaps not unusual, omission in his mother's estate of property of a personal nature and of small value, and which such employees had told him he need not inventory, he neither misrepresented nor concealed anything. The required notices in the 3 estates were duly published. There was no fraud upon which to base a constructive trust.

Even assuming fraud, the invalidity of the legally published notices and a consequent constructive trust, respondent neither pleaded nor offered evidence as to when he discovered the alleged fraud. See Womack v. Callaway County, (Mo. Sup.) 159 SW 2d 630; and Kerber v. Rowe, 348 Mo. 1125, 156 SW 2d 925. So respondent's claims arising out of the administration of all 3 estates would have been barred by the 5 year provisions of Sec. 1014, supra. Furthermore, those arising out of the administration of respondent's and the father's estates would have been barred by the 10 year provision, the fifth

clause of Sec. 1014, supra. No notice was necessary as to appellant's claim of entire ownership of the residence property. Mann v. Mann, supra.

Appellant has expended none of the funds received by him from either the mother's or respondent's estate. He has retained them, together with all accrued interest thereon, in separate bank accounts. But he certainly intended to hold respondent's share of the parents' estates if he could. He so informed respondent when he visited him in prison about 1944. And, by invoking the statutes of limitations (as he had a legal right to do), he has been able to avoid accountability to the conscience of the chancellor in equity. He must now account to his own conscience for his refusal to pay for his brother's birthright at least the "bread and pottage of lentiles" that Jacob paid Esau.

We recognize that our conclusions will result in hardship to respondent. We recognize that the primary purpose of our constitutional and statutory provisions relating to pardon, commutation of sentence and parole of a convict is his return to the community with "his debt to society paid" and an opportunity for rehabilitation and [105] a new life, creditable both to himself and to the community. We recognize that possession of the property involved would materially assist respondent along the long and difficult road he began to travel upon his release from prison. But, again assuming the propriety of respondent's claims, this court cannot judicially enforce causes of action clearly barred by statutes of limitations.

The judgment is reversed and the cause is remanded with directions to enter judgment dismissing plaintiff's petition. *Van Osdol* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.