Joseph B. KOHOUT and Theresa A. Kohout, his wife (Plaintiffs),

v.

Milton T. ADLER, Norien Piper and Daniel W. Piper, Eleanor Vandas (Defendants), Appellant,

Standard Accident Insurance Company, a corporation (New Party Defendant), Respondent.

No. 30297.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1959.

Edward C. Schneider, Harry A. Frank, St. Louis, for appellant.

J. D. Leritz, J. L. Leritz, St. Louis, for respondent.

JAMES D. CLEMENS, Special Commissioner.

This is an action on a notary public's bond, thwarted by the surety's plea of the 3-year statute of limitations. The issue here is whether the statute began to run its course when the defalcation occurred in 1952 or when it was discovered by the victim in 1958.

The first scene of this legal drama opened with the innocent bystanders, Joseph and Theresa Kohout, bringing suit to set aside a forged deed of trust which clouded the title to their home. The principal defendant (and the villain of the piece) was Daniel Piper, a notary public. The Kohouts say Piper forged their signatures to a series of notes and deed of trust and falsified their acknowledgment thereto. Also made defendants were the named trustees and beneficiary in the deed of trust, and Eleanor Vandas, to whom Piper sold the notes and who now prayerfully holds them. Mrs. Vandas, fearing that she will find herself bilked of some $5,000 paid by her to Piper for the bogus paper, has brought this cross-action against Piper's corporate surety.

The factual background pleaded by Mrs. Vandas in her cross-claim against the surety is this: In 1950, Piper was commissioned a notary public for a four-year term and duly executed a $5,000 bond. Mrs. Vandas had done business with Piper for years and trusted him. In February of 1952 Piper corruptly represented to Mrs. Vandas that he owned the Kohouts' notes and a first deed of trust freshly executed on their property. There was a three-year note for $5,000, and five semi-annual principal notes of $150 each, said Piper. Unknown to all but Piper, these notes and the deed of trust had been forged and the acknowledgment falsified by Piper. Mrs. Vandas was persuaded. She bought the notes from Piper at face value. He handed over the notes, the recorded deed of trust, a proper title certificate and a fire insurance policy. For the next three years, Piper claimed to be collecting the semi-annual notes and interest installments from the Kohouts, and from time to time he duly made such payments to Mrs. Vandas. Then, when the $5,000 note fell due in February of 1955, Piper told Mrs. Vandas the Kohouts wanted to extend the loan. Upon her agreement thereto, Piper presented Mrs. Vandas with a renewal agreement and new semi-annual notes, which also had been forged by Piper. The amounts called for by these new notes were similarly paid by Piper to Mrs. Vandas when due. Piper's whole course of conduct maintained Mrs. Vandas' sense of security until January of 1958 when the

newspaper carried a story that Piper had been suspended as a member of a local real estate board. Mrs. Vandas investigated, and the light dawned.

The surety moved to dismiss Mrs. Vandas' cross-petition because of the special statute of limitations pertaining to notaries' bonds, Section 486.050 RSMo 1949, V.A.M.S., which in part provides:

> "Said bond, after having been so recorded, shall be filed in the office of the secretary of state, and may be sued on by any person injured; but no suit shall be instituted against any such notary or his sureties more than three years *after such cause of action accrued.*" (Emphasis ours.)

The section contains no exceptions nor provisions for tolling its application. The trial court ruled that Mrs. Vandas' cause of action accrued at the time of the original defalcation in February of 1952, found that Section 486.050 is a special statute of limitation which could not be tolled by Piper's concealment of the defalcation, and ruled that the cause of action was therefore barred by the statute. The trial court declared that its order of dismissal be deemed a separate, final judgment for the purpose of appeal.

We must point to a distinction between general and special statutes of limitation. The former are found in Chapter 516 RSMo 1949, V.A.M.S. By Sections 516.120 and 516.280 there are provisos tolling, that is, suspending, the application of the general limitations in certain cases where a party has concealed himself or his wrong. But, by Section 516.300, these provisos are declared inapplicable to actions to which some special statute applies. The three-year limit in Section 486.050 is a special statute of limitations, dealing with actions on notaries' bonds. It carries neither exception nor proviso. Hence, it cannot be tolled, or suspended. "A special statute of limitations must carry its own exceptions and we may not engraft others upon it." Frazee v. Partney, Mo.Sup., 314 S.W.2d

915, 919; and see State ex rel. Bier v. Bigger, 352 Mo. 502, 178 S.W.2d 347, loc. cit. 351.

So the real issue here is not whether Piper's active concealment of his wrong *tolled* the special statute. It could not be tolled. Instead, the question is whether Mrs. Vandas' cause of action *accrued* at the time of Piper's defalcation in 1952 or at the time of Mrs. Vandas' discovery thereof in 1958.

In Hunter v. Hunter, 361 Mo. 799, 237 S.W.2d 100, 103, 24 A.L.R.2d 611, it is stated as a "well-established rule" that a cause of action accrues, and limitations thereon begin to run, when the right to sue arises.

This question of the time of accrual of a cause of action was recently discussed by the Supreme Court in the case of Frazee v. Partney, 314 S.W.2d 915, 920. That was an action for wrongful death brought two years after an automobile accident. The wrongful death act provides that actions thereunder " * * * shall be commenced within one year after the cause of action shall accrue * * *." Section 537.100 RSMo 1949, V.A.M.S. The plaintiffs pleaded that the defendant had criminally left the scene of the accident and concealed his identity and whereabouts until a short time before suit was filed. They contended that their cause of action did not accrue until it became possible for them to sue the defendant. The Supreme Court held that the defendant's unlawful concealment did not extend the beginning of the one-year statute, and ruled that the action accrued at the time of death. The court said: " * * * It may be stated as a general principle that, unless affected by statute, a cause of action 'accrues at the moment of a wrong, default or delict by the defendant and the injury of the plaintiff * * * if the injury, however slight, is complete at the time of the act.' 1 Am.Jur., Actions § 61, pp. 451–454. In Hunter v. Hunter, 361 Mo. 799, 237 S.W. 2d 100, 103, this court said: 'A cause of action accrues, and limitations thereon begin to run, when the right to sue

arises.' In Coleman v. Kansas City, en Banc, 353 Mo. 150, 182 S.W.2d 74, loc. cit. 78, the court said: ' "It may be stated as a sound general proposition that a cause of action accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time." 34 Am.Jur., page 92, sec. 113.' In Unexcelled Chemical Corp. v. United States, 345 U.S. 59, loc. cit. 65, 73 S.Ct. 580, 583, 97 L.Ed. 821, the court said: 'A cause of action is created when there is a breach of duty owed the plaintiff. It is that breach of duty, not its discovery, that normally is controlling. * * *'" (314 S.W.2d l. c. 920.)

■ Applying this reasoning, and cleaving to the principle that a court cannot engraft exceptions upon a special statute of limitations, we conclude that Mrs. Vandas' cause of action accrued at the time she exchanged her good money for Piper's bogus securities in 1952. At that moment there was a wrong and a resulting injury, and her cause of action then accrued. It became barred three years later, even though discovery of the wrong done her was prevented by Piper's further wrong in covering his fraud. This is a harsh ruling but as said in Frazee v. Partney, supra [314 S.W.2d 921]: "* * * Undoubtedly a hardship has resulted here, and this decision has not been easy. We are forced to construe the cold, clear words of the statute, and if its scope is to be enlarged we feel that the remedy is legislative, not judicial. * * *"

Mrs. Vandas has forcibly briefed her theory that her cause of action did not accrue until she could have reasonably discovered Piper's wrongdoing. In her cited case of State ex rel. O'Malley v. Musick, 145 Mo.App. 33, 130 S.W. 398, 402, 403, the court quoted a statement from a Pennsylvania case to the effect that where a fraudfeasor continues his fraud by affirmative acts to prevent discovery "then he gives to his original act a continuing character, by virtue of which he deprives it of the protection of the statute (of limitations) until discovery." However, the pleadings and evidence were held not to have established any such continuing acts, so the quoted statement can be considered only as *obiter*.

This court's opinion in the case of State ex rel. Meinholtz v. American Surety Co. of New York, Mo.App., 254 S.W. 561, is cited by Mrs. Vandas. The initial scheme of fraud there was similar to the one here. There, the notary issued forged notes and deeds of trust to a Miss Rooch. Three years later the notary paid Miss Rooch and resold the notes and deed of trust to the relator, who two years thereafter sued the notary and surety. Some language in the opinion seems to support Mrs. Vandas' theory as to accrual upon discovery. But, in that case the relator filed suit two years after he purchased the forged paper, and his cause of action could not be said to have accrued before such purchase. See the comment as to this view of the Meinholtz case by the Supreme Court in State ex rel. State Life Ins. Co. v. Faucett, 163 S.W.2d 592, 595. We rule that the Meinholtz case is not in point.

Mrs. Vandas puts her main stress upon the case of State ex rel. Barringer v. Hawkins, 103 Mo.App. 251, 77 S.W. 98, decided by the Kansas City Court of Appeals in 1903. There, as here, the notary sold his victim a set of forged notes and deed of trust, and kept the victim unaware of his fraud for more than three years by paying interest claimed to have been collected from the reputed borrower. The court ruled that the cause of action did not accrue until the victim could reasonably be expected to have discovered the fraud. It reasoned that the purpose of the statutes of limitation was to encourage diligence in bringing claims, but that when the person so protected resorted to fraud in order to hide the very existence of a claim against him, then there has been no lack of diligence and the wrongdoer should not be entitled to the statute as a shield against his own fraud. (This is said to be the Missouri rule in a case involving the *general* statutes of limitations, which carry their own exceptions as to fraudulent

concealment. Sections 516.120 and 516.-280; State ex rel. School Dist. of St. Joseph v. Wells, Mo.Sup., 270 S.W.2d 857, quoting 34 Am.Jur., Section 231.) The Hawkins case squarely supports Mrs. Vandas. The point was there stated to be one of first impression in Missouri. We do not find that it has been followed in any other case involving the question of the time when a cause of action accrues, nor applied in any other case involving a special statute of limitations. The Hawkins case seems to stand alone against others to the contrary. It is hostile to the cases cited in Frazee v. Partney, supra. It runs across the grain of the holding in Kober v. Kober, 324 Mo. 379, 23 S.W.2d 149, 152, a case dealing with the two-year statute of limitations on dower, where the court said: "Nor does the failure to discover the fraud, or acts of defendants in concealing the fraud, toll the running of the statute. No such exceptions are written into the statute, and we are not at liberty to insert them (citing cases)." The Hawkins' case is squarely against the holding in State ex rel. Bier v. Bigger, 352 Mo. 502, 178 S.W.2d 347, 350, concerning fraudulent concealment of a will beyond the special one-year limitation period for probating wills, the court there saying: "This court has uniformly held that where a statute of limitations is a special one, not included in the general chapter on limitations, the running thereof cannot be tolled because of fraud, concealment, or any other reason not provided in the statute itself. * * *"

Accordingly, we must follow these later opinions, rather than the Hawkins case. We must adhere to the proposition that Mrs. Vandas' cause of action accrued when the fraud was committed upon her in 1952. Hence, the trial court properly dismissed her petition for failure to comply with the special three-year statute of limitations.

The Special Commissioner recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of CLEMENS, Special Commissioner, is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

WOLFE, P. J., and ANDERSON, J., concur.

RUDDY, J., not sitting.