**E. H. KAUFMAN, Plaintiff,**

v.

**C.R.A., INC. (Formerly The Cooperative Refinery Association), Defendant.**

**No. 14645–1.**

United States District Court
W. D. Missouri, W. D.

July 23, 1965.

Buthod & Harrison, Evansville, Ind., Campbell & Clark, Kansas City, Mo., Wilson, Dyar, Houchen & McDonald, Decatur, Ill., for plaintiff.

Douglas Stripp, Robert B. Olsen, Kansas City, Mo., for defendant.

JOHN W. OLIVER, District Judge.

This case pends on defendant's motion for partial summary judgment directed to Count I of plaintiff's amended complaint.

As will later be made apparent in detail, the parties agreed, after one day of actual trial before the Court without a jury, to present the statute of limitations question raised by defendant's pending motion on what, in effect, is an agreed statement of facts. In order that the general factual background of the litigation and relevant dates be put in focus at the outset, we quote a portion of defendant's statement of those matters which plaintiff, in his brief, acknowledged to be substantially correct and accurate:

> This action was originally filed to recover for the alleged fraud of defendant. Plaintiff alleged that defendant fraudulently over-stated certain oil reserves, thereby inducing him to invest in further oil leases. These leases were not productive and, as a consequence of the claimed fraud, plaintiff alleged substantial damages.
>
> At the commencement of trial plaintiff changed his theory from fraud to negligent misrepresentation. After a partial trial, and at the suggestion of the Court, the case was stipulated into posture for a motion for partial summary judgment based upon the bar of the statute of limitations. * * * The

issues in Count II of the amended complaint concerning a work-over on the Howland lease remain outside the scope of the motion.

Defendant assumes for purposes of this motion that plaintiff has stated and can prove a claim for negligent misrepresentation (Tr. 13, 17, 18). * * * The assumed facts are set out in the following paragraphs.

Plaintiff bought from defendant 50% of the working interest in the Byer lease on December 10, 1951. Defendant drilled the Byer lease and it was an oil producing lease. Plaintiff bought from defendant 50% of the working interest in the Howland lease on July 10, 1953, and it too proved to be a producing lease.

At various times between December, 1951 and October, 1954 plaintiff consulted with Owen W. Simonton, a petroleum engineer employed by defendant, concerning the development of the oil and gas properties which he and defendant jointly owned and developed. On various occasions during this period Simonton gave plaintiff his opinion on the amount of recoverable oil reserves underlying the Byer and Howland leases, the last such occasion being on June 17, 1955 (Tr. 23, 30). Simonton's reserve estimates proved to be substantially greater than the actual production attained on the Byer and Howland leases (Tr. 8). In reliance upon the Byer and Howland reserve estimates supplied by Simonton and upon Simonton's recommendation, plaintiff invested in six additional oil and gas ventures from July 10, 1952 to October 24, 1954, by purchasing fractional portions of the working interest in leases owned by defendant (amended complaint, paragraph 15). None of these leases were commercially productive.

Plaintiff's evidence would establish negligence on the part of Simonton in making the oil reserve estimates on the Byer and Howland leases.

Plaintiff made his last lease development payment to defendant on September 16, 1955 (Tr. 28). That is the date of the last damage suffered by plaintiff in regard to the cause of action alleged in Count I of the amended complaint and which is being tested by this motion (Tr. 11, 18).

It first came to plaintiff's attention in 1960 that Simonton's reserve estimates were very substantially overstated. In 1962 plaintiff concluded that the cause of the overstatement was Simonton's negligence (Tr. 23, 24). The original complaint was then filed October 17, 1963.

Plaintiff does not contend that the mere continuation of his relationship with defendant with regard to the Byer and Howland leases, subsequent to September 16, 1955, means that any portion of the cause of action accrued subsequent to September 16, 1955 (Tr. 14, 15). Nor is there any contention that plaintiff was fraudulently or negligently induced to invest in Byer and Howland (Tr. 15).

The theory of plaintiff's case is based on negligent misrepresentation, as stated in Section 552 of the Restatement of Torts (Tr. 22, 26).

* * * * * *

It is stipulated that plaintiff made his last lease development payment to defendant on September 16, 1955. He suffered no damage as a result of the alleged negligence of defendant after that date. The last allegedly negligent act occurred no later than June 17, 1955, the last time defendant supplied plaintiff with any reserve estimates. The complaint in this action was filed in October, 1963, more than eight years after the date of plaintiff's last damage or defendant's last allegedly negligent act.

The facts need not be stated in further detail because it has been agreed that none of the material facts are in dispute (Tr. 34). The transcript of the proceedings reflecting that the parties' factual agreements and stipulations of record is made a part of this memorandum by this reference.

Both parties are also agreed that the statute of limitations question presented by defendant's pending motion is controlled by Missouri law and that Section 516.120 RSMo 1959, V.A.M.S., is the applicable statute.

Plaintiff stated for the record that "the Court may accept September 15, 1955, [this date was later changed to September 16, 1955 (Tr. 28)], as the date of the last damage suffered by the plaintiff in regard to the cause of action that will be tested by the motion for summary judgment" (Tr. 11) and that plaintiff does not intend "to stretch the date of the sufferance of damage beyond the date of September [16], 1955" (Tr. 18). Plaintiff made clear that he does not contend either that "the mere continuation of a relationship in regard to both the Byer lease and the Howland lease, subsequent to the September [16] 1955 date is designed to support any contention that any portion of the cause of action accrued subsequent to the September [16] 1955 date" (Tr. 14–15) or that either of the two leases mentioned "was induced either by fraud or by negligence" (Tr. 15).

Plaintiff also concedes that the statute bars the Count I cause of action unless it can be said that the date the statute commenced to run is to be "measured from the date on which plaintiff first had the opportunity to learn of the existence of his claim" (plaintiff's suggestions, page 9). That date is to be distinguished from the date plaintiff sustained his last damage; a date which admittedly would bar plaintiff's claim.

The determination of the question posed turns on whether the Missouri courts would hold that a cause of action alleged under the theory of Section 552 of The Restatement of Torts [1] is within the compass of paragraph (4) of Section 516.120, which provides a five year limitation period for all actions "for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated"; or whether such a cause of action is within the compass of paragraph (5) of Section 516.120, which contains the usual tolling provision for fraud actions and in which it is provided that in "[a]n action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud".

Plaintiff's original complaint pleaded a typical action based on defendant's alleged fraud. Paragraph 3 of Count I, for example, alleged that defendant "made certain false and fraudulent representations"; that such were "known by the defendant to be false"; that they were "made with the intention of deceiving the plaintiff and inducing the plaintiff to act in reliance thereon to his detriment"; and that plaintiff, "believing said representations to be true," acted upon them to his detriment and damage.

But, as the record of the second day of trial shows, plaintiff acknowledged that he would not attempt to prove the allega-

---

1. That Section provides:
§ 552. Information Negligently Supplied for the Guidance of Others.
One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if
(a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and
(b) the harm is suffered
(i) by the person or one of the class of persons for whose guidance the information was supplied, and
(ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith.

tions of fraud as contained in his original complaint.

The record made on that second day of trial reflects the following:

THE COURT: Let the record show that after the conclusion of proceedings in this case in open court yesterday that counsel conferred among themselves and later conferred with the Court in regard to the discussion of whether or not it was feasible to devise a procedure under which the question of Statute of Limitations could be put into posture for a motion for partial summary judgment that would enable the Court to make a definitive decision on all portions of the pending case, with the exception of the controversy that relates to the workover of one of the wells on the Howland lease, which the parties are in agreement is not within any Statute of Limitations.

The discussion last evening and the informal discussion before we went on the record this morning suggests that counsel for the plaintiff be given an opportunity to make a statement of what evidence plaintiff expects to offer in this case which the defendant may agree that, for purposes of a motion for partial summary judgment, and only for that purpose, the plaintiff would be able to offer such testimony.

The parties have also indicated that there is a likelihood that they will agree that all pleadings, interrogatories and their answers, requests for admissions, if any, that have been answered, and the depositions and exhibits to the depositions, and perhaps some additional exhibits that we may discuss later, would also be considered to be before the Court for purposes of ruling a motion for partial summary judgment that defendants anticipate making pursuant to Rule 56.

At this time, in order that plaintiff may make such a statement, and in order that the record will hopefully show that there are no disputes about material facts which the defendant would urge that would be sufficient to sustain its Statute of Limitations defense, I will permit Mr. Clark, on behalf of the plaintiff, to make a statement in accordance with what I have just suggested. (Tr. 3–4).

Counsel for the plaintiff then stated in detail (Tr. 6–28) the evidence he anticipated making "for purposes of submitting to the Court for determination the issues raised by the defendant's motion for partial summary judgment" (Tr. 6). Defendant agreed that plaintiff could and would offer such evidence; agreed that for purposes of the pending motion, the facts established by that evidence should be considered by the Court to be true; and requested a limited number of additional admissions, all of which were given by plaintiff (Tr. 30–34). The procedural stage was thus set for the determination of the present motion.

After the parties had agreed that the "record [may] show that the parties are in agreement that there are no disputes about the essential facts that defendant wishes to predicate its motion for partial summary judgment" (Tr. 34), we stated for the record that "the case is taken as submitted, in accordance with the understandings and agreements and orders that have heretofore been entered this morning" (Tr. 44).

In the course of putting the case in posture for the filing of the pending motion, plaintiff stated that "as the plaintiff indicated in his opening statement yesterday, to the extent that the complaint charges what has been described as actual fraud, it is our intention to amend the complaint * * * to delete any reference which might be taken as actual fraud" (Tr. 21).

In his opening statement the day before, plaintiff's counsel had stated that "the facts which will be presented indicate that the real theory is the neg-

ligence theory which the plaintiff has briefed in the brief filed last week." [2] Plaintiff's counsel then added that "we are prepared and do commit ourselves to that theory, rather than the traditional fraud theory. * * * "

When plaintiff used some loose language the next day about "constructive fraud" (Tr. 22), we stated that it was our understanding that plaintiff was shifting to a "new theory of negligence as distinguished from the cause of action of the present complaint, which is clearly predicated as an actual fraud case" (Tr. 22). Plaintiff agreed that our understanding was correct (Tr. 22).

Plaintiff also agreed that "the record will definitively show that the theory that the case as presently being presented is a case generally predicated on the theory of Section 552 of the Restatement, as distinguished from a garden variety fraud and deceit action" (Tr. 22).

At many other places in the record, plaintiff's new cause of action was described as sounding in negligence (See, for examples, Tr. 13, 18, and 22). Indeed, plaintiff reiterated that "recovery is not sought on the garden variety of fraud and deceit but is presently [maintained] on the theory of the alleged neg-

-ligent misrepresentation theory as set forth in Section 552 [of the Restatement]" (Tr. 26).

Paragraph 3 of plaintiff's first amended complaint, filed pursuant to the schedule ordered at the conference (Tr. 36), illustrates plaintiff's abandonment of his cause of action for fraud. Instead of alleging a cause of action for fraud, as he had done in his original complaint, plaintiff in his first amended complaint alleged that the defendant "carelessly and recklessly made and transmitted certain representations and statements to plaintiff"; that such were "known by the defendant or should have been known by the defendant to have been untrue and based upon insufficient or unreliable data"; and that "the same were transmitted to the plaintiff for the purpose of inducing and persuading the plaintiff to act;" and that plaintiff did act to his detriment and damage.

Whether the Missouri courts would hold that plaintiff might have been entitled to the tolling provisions of paragraph (5) of Section 516.120 had he elected to proceed on his original cause of action is not the question for decision. Plaintiff abandoned that cause of action in obvious recognition of the difficulties of nature of the proof required.[3]

---

2. In that brief, plaintiff stated:

Actionable misrepresentations may perhaps more properly be described under the circumstances of this case as founded on negligence rather than fraud. The latter term seems to carry in common parlance identification with a preconceived scheme whereby an innocent party is deprived of money or property to the profit of the wrongdoer. * * * The subject of negligent misrepresentations is described fully in Restatement of the Law of Torts, Chapter 22, Sec. 552.

After quoting that Section of the Restatement and a portion of the comments, plaintiff stated:

The foregoing clearly states the basis for plaintiff's claim of liability upon defendant.

3. The vast difference in the quantum of proof required by Missouri law in a fraud action, as compared to an action based on the theory of Section 552 of the Restatement is illustrated by Chief Judge Vogel's opinion in Jones & Laughlin Steel Corp. v. Sedalia Ind. Loan and Inv. Co., 8 Cir. 1963, 315 F.2d 58 at 61. It was there held:

Under the law of Missouri, which is controlling herein, the essential elements of actionable fraud are: 1, a representation; 2, its falsity; 3, its materiality; 4, the speaker's knowledge of its falsity or ignorance of its truth; 5, his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6, the hearer's ignorance of its falsity; 7, his reliance on its truth; 8, his right to rely thereon; 9, and his consequent and proximate injury. See Powers v. Shore, Mo.1952, 248 S.W.2d 1. Each and every one of the elements must be established in order to allow a recovery.

See also Heckenkamp v. Kennedy, 8 Cir. 1959, 267 F.2d 887 at 891.

The question is whether the Missouri courts would hold that plaintiff's new cause of action, based as it is on the theory of Section 552 of the Restatement of Torts, is "[a]n action for relief on the ground of fraud", within the meaning of paragraph (5) of Section 516.120 and whether plaintiff is therefore entitled to the benefit of tolling provision of that paragraph which provides that a "cause of action * * * for relief on the ground of fraud * * * [is] to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years."

■ We do not believe that the courts of Missouri would so hold. On the contrary, we are convinced that the Missouri courts would hold that the statute of limitations that would be held to be applicable to a cause of action based upon the theory of Section 552 of the Restatement of Torts would be paragraph (4) of Section 516.120 and that under the undisputed facts presented, plaintiff's cause of action would be held to be barred.

Cases need not be cited to sustain the proposition that Missouri courts frequently cite and apply particular sections of the American Law Institute's Restatement of Laws. We do not think that a Missouri court would overlook that portion of Comment (a) to Section 552 of the Restatement of Torts which states that "liability under the rule stated in this Section is based on the negligence of the actor in failing to exercise reasonable care in supplying correct information." Indeed, we are convinced that a Missouri court would hold that any fair evaluation of plaintiff's new cause of action would require that it be classified as a paragraph (4) tort action not "otherwise enumerated" in Section 516.120 and that it not be classified as "[a]n action for relief on the ground of fraud" within the meaning of paragraph (5) of that section. We so hold.

■ It is clear that Missouri generally follows the general rule that a cause of action accrues the moment the right to commence an action comes in existence, and that statutes of limitations commence to run from that time. The Missouri cases are collected in Kohout v. Adler, St.L.Ct. of App.1959, 327 S.W. 2d 492 at 495–496. That case quotes the following with approval from Unexcelled Chemical Corp. v. United States, 345 U.S. 59 at 65, 73 S.Ct. 580, at 583, 97 L.Ed. 821:

A cause of action is created when there is a breach of duty owed the plaintiff. It is that breach of duty, *not its discovery*, that normally is controlling. * * * (Emphasis ours)

Our controlling court has recently held in Hellerbrand v. Hoctor, 8 Cir. 1964, 331 F.2d 453 at 455, that:

The Supreme Court of Missouri has consistently held that Missouri Statutes of Limitations are to be strictly construed, neither to be extended to embrace cases not within the specific exemptions enumerated nor enlarged upon because of cases of hardship. Hunter v. Hunter, 237 S.W.2d 100, 104 (Mo.1951); Black v. City National Bank & Trust Company, 321 S.W.2d 477, 480 (Mo. 1959).

Black v. City National Bank and Trust Company, relied upon by our controlling court, expresses an additional rule of decision that we must follow. That case held:

"Statutes of limitation are favored in the law, and cannot be avoided unless the party seeking to do so brings himself strictly within some exception," Shelby County v. Bragg, 135 Mo. 291, 36 S.W. 600, 602; Hunter v. Hunter, Mo.Sup., 237 S.W.2d 100 [8], and the exceptions provided for by the Legislature are not to be enlarged by the courts upon considerations of apparent hardship. [321 S.W.2d at 480].

And the Hunter case, also cited and relied upon in Hellerbrand, holds that the creation of any exceptions to the Missouri Statute of Limitations are not within the scope of judicial function but "are matters of public policy for

determination by the General Assembly" (237 S.W.2d at 104).

The only exception that the Missouri General Assembly has made to permit the tolling of the statutory periods established by Section 516.120 of the Missouri Statutes is contained in paragraph (5) of that section which relates solely to "[a]n action for relief on the ground of fraud."

We cannot believe that the Missouri courts would hold that plaintiff's new cause of action is that sort of cause of action. The record establishes beyond argument that plaintiff intentionally and unequivocally abandoned all efforts to base his action for relief on the ground of fraud. We believe the Missouri courts would hold that its statute of limitations expresses the public policy of Missouri that it is *only* in cases of fraud that a cause of action shall be "deemed not to have accrued until the discovery by the aggrieved party," as provided *only* in paragraph (5) of Section 516.120.

We must therefore conclude that the Missouri courts would apply its announced general rule governing limitations of action; that they would hold that plaintiff's cause of action as pleaded in the first amended complaint accrued when defendant allegedly breached its duty and damaged plaintiff, events that admittedly took place prior to September 16, 1955; that discovery by plaintiff of defendant's allegedly wrongful actions is neither material nor controlling; that the cause of action alleged in plaintiff's first amended complaint is governed by paragraph (4) of Section 516.120; and that the five year period of limitation provided in that statute ran before plaintiff brought suit; all to the end that defendant's motion should be sustained. We so hold.

## DIRECTION OF FURTHER PROCEEDINGS

Rule 56(c) requires that we direct further proceedings because our action sustaining defendant's motion leaves Count II of plaintiff's amended complaint pending. A final judgment may not now be entered.

When the summary judgment procedure for Count I was established, it was determined that Count II, involving the Howland lease work-over, should be considered as a separated issue under Rule 42(b) of the Rules of Civil Procedure (Tr. 37). Defendant's counterclaim is interrelated with and must be considered as a part of the Howland lease work-over question.

Counsel for both sides suggested at that time that no evidence be received on those separated issues until after the motion for partial summary judgment was ruled (Tr. 37–38). Both parties recognized the necessity of further discovery in regard to those matters; and, perhaps of more immediate practical importance, the parties indicated that they felt the possibilities of settlement concerning this separated part of the litigation had not been exhausted (Tr. 38).

As we have suggested, a final judgment cannot now be entered. If, however, counsel are able to settle all matters outside the scope of the pending motion, we are confident that a final judgment dismissing Count I could then be entered in which could be included the dollars fixed by any settlement the parties may reach in connection with the separated matters. Should that happen, plaintiff would then be placed in a position where he could immediately perfect an appeal of our present ruling on defendant's motion for partial summary judgment.

In order, therefore, that (a) opportunity be given to exhaust the settlement possibilities to which we have made reference, and (b) that counsel be permitted to prepare a suggested form of order that will reflect our present determination of the pending motion; and, if necessary, shall include appropriate direction of further proceedings in connection with all remaining undetermined and separated issues, it is ordered that:

1. Within fifteen (15) days counsel confer for the purposes indicated and thereafter report to the Court the results of their conference and negotiations.

2. If settlement negotiations of the separated issues are successful, counsel shall present their joint recommendation of the form of final judgment that they believe should be entered. If agreement on form can not be reached, each party shall submit separate recommendations of a form satisfactory to him.

3. If settlement negotiations are not successful, then the recommended form of suggested order or orders shall (a) recite the action today taken on the pending motion for partial summary judgment, and (b) direct further and final discovery and all further proceedings in regard to the immediate trial of the remaining separated issues. In the unanticipated event that the parties can not agree, the procedure outlined in paragraph 2 above shall be followed.

4. After we have had an opportunity to study and consider the filings above ordered, counsel will be notified of the date a further conference will be held.

We express our appreciation to counsel for both sides for their excellent briefs and exemplary cooperation with each other and with the Court.

It is so ordered.