Lonnie **DAVIDSON** and Margaret Davidson, Plaintiffs/Appellants,

v.

Oscar **LAZCANO** and WCP Pathology, Inc., d/b/a WCP Pathology, P.C. and Surgical Pathology, Defendants/Respondents.

No. ED 86427.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 1, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 5, 2006.

Application for Transfer Denied Nov. 21, 2006.

William M. Wunderlich, High Ridge, MO, for appellants.

Kevin J. Adrian, St. Louis, MO, for respondents.

LAWRENCE E. MOONEY, Judge.

This is a medical-malpractice action brought by the plaintiffs, Lonnie and Margaret Davidson, against Oscar Lazcano, M.D., and WCP Laboratories, Inc. d/b/a WCP Pathology, P.C. and Surgical Pathology. The trial court granted summary judgment in favor of the defendants holding that the plaintiffs' action was barred by Section 516.105 RSMo, which prescribes a two-year limitation on actions against health care providers, and further holding that the "failure to inform" exception under section 516.105 did not operate to toll the limitations period. We agree with the trial court's conclusions and affirm.

*Factual Background*

The following facts are not in dispute.

On November 3, 1998, plaintiff Lonnie Davidson underwent an excisional biopsy of his right cervical lymph node. The biopsy specimen was sent to WCP Laboratories for analysis, which was performed by Dr. Lazcano. On November 7, 1998, Dr. Lazcano issued a report in which he stated that the specimen showed malignant lymphoma—mantel cell type. A copy of the report was sent to Mr. Davidson's treating physician, Dr. Ginsburg. Within two to three weeks of the biopsy, Dr. Ginsburg informed Mr. Davidson of Dr. Lazcano's findings. After recommendations by both a lymphoma specialist and a radiation specialist, Mr. Davidson underwent radiation treatment, which was completed in February of 1999.

On August 14, 2000, Mr. Davidson sought a second opinion from Dr. Nancy Bartlett regarding his diagnosis of mantel zone lymphoma. Dr. Bartlett arranged to have Mr. Davidson's biopsy specimen re-analyzed. This re-analysis did not identify diagnostic features of lymphoma. Rather, the pathologists who re-analyzed the speci-

men made a diagnosis of follicular hyperplasia—a benign diagnosis.

On October 21, 2002, Mr. and Mrs. Davidson filed a medical-malpractice action against Dr. Lazcano and WCP Laboratories, asserting claims for personal injury and loss of consortium.[1] The plaintiffs alleged Dr. Lazcano was negligent in that he failed to properly analyze Mr. Davidson's lymph node biopsy specimen. Alternatively, the plaintiffs alleged Dr. Lazcano properly analyzed the specimen, but failed to communicate the proper result to Mr. Davidson's treating physician.[2] The plaintiffs alleged damages flowing from the unnecessary radiation treatments.

The defendants moved for summary judgment based on the statute of limitations. In response, the plaintiffs argued that the "failure to inform" exception to the two-year statute of limitations applied, tolling the statute of limitations such that the limitation period did not begin to run until October 30, 2000—the date plaintiffs alleged Mr. Davidson discovered the true and accurate result of his biopsy. Thus, the plaintiffs argued that their petition, filed on October 21, 2002, was timely filed. The trial court sustained the defendants' motion holding that Mr. Davidson's claim for personal injury was barred by section 516.105 because he did not initiate suit within two years of the alleged malpractice and, further, because the statute of limitations was not tolled by any exception, as a foreign object was not left in Mr. Davidson, Dr. Lazcano did not provide continuing treatment to Mr. Davidson, Mr. Davidson was not a minor, and Mr. Davidson was informed of Dr. Lazcano's medical conclusions regarding the biopsy results.[3] The plaintiffs now appeal.

## Analysis

■ The dispositive issue of law before this Court is whether the plaintiffs' action is time-barred. The applicable statute of limitations for a medical-malpractice action is Section 516.105 RSMo 2000.[4] That statute provides, in pertinent part, as follows:

All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, professional physical therapists, and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of. . . .

(a) he failed to properly analyze said lymph node, or
(b) he properly analyzed said lymph node but failed to communicate the proper result to plaintiff's treating physician.

1. WCP Laboratories's alleged liability was derivative. The plaintiffs alleged Dr. Lazcano was acting within the scope and course of his employment as an agent, servant, and employee of WCP Laboratories. Aside from Dr. Lazcano's conduct, the plaintiffs alleged no other claim against WCP Laboratories.

2. Specifically, the plaintiffs' negligence allegations, in their entirely, read as follows:
Defendant Oscar Lazcano was negligent in the treatment he provided to Plaintiff in that he failed to exercise the degree of skill and learning ordinarily used by a physician in the same and similar circumstances because he failed to properly treat said conditions in the following respects:

3. Additionally, the trial court entered summary judgment for the defendants on Mrs. Davidson's loss-of-consortium claim on grounds that she could not recover for loss of consortium because Mr. Davidson's claim for personal injury was time-barred.

4. Unless otherwise indicated, all statutory references are to RSMo 2000.

Here, the plaintiffs alleged Dr. Lazcano was negligent in that he either failed to properly analyze the biopsy specimen of Mr. Davidson's lymph node or failed to communicate the proper result to Mr. Davidson's treating physician. Under either alleged act of negligence, Dr. Lazcano's alleged malpractice occurred no later than November 7, 1998—the date he issued a report indicating that Mr. Davidson had malignant lymphoma. Accordingly, under section 516.105 the plaintiffs had two years—until November 7, 2000—to bring their action. The plaintiffs, however, did not file their action until October 21, 2002—nearly four years after the act of neglect of which the plaintiffs complain. The plaintiffs' action is barred by operation of Section 516.105, unless an exception operates to toll the limitations period.

There are four circumstances that can toll the two-year statute of limitations under section 516.105. Section 516.105 contains three exceptions—the "foreign object" exception, the "failure to inform" exception, and the "minor child" exception. Sections 516.105(1)-(3). In addition, the Supreme Court of Missouri has recognized a "continuing care" exception to the two-year limitations period for medical-malpractice actions. *Green v. Washington University Medical Center*, 761 S.W.2d 688, 689 (Mo.App. E.D.1988) *citing Thatcher v. De Tar*, 351 Mo. 603, 173 S.W.2d 760, 762 (1943). Of these four exceptions, only the "failure to inform" exception is at issue in this case.[5] That exception provides as follows:

> In cases in which the act of neglect complained of is the negligent failure to inform the patient of the results of medical tests, the action for failure to inform shall be brought within two years from the date of the discovery of such alleged negligent failure to inform, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligent failure to inform, whichever date first occurs; except that, no such action shall be brought for any negligent failure to inform about the results of medical tests performed more than two years before August 28, 1999.

Section 516.105(2).[6]

The plaintiffs recharacterize this exception as a "discovery of the truth" exception. They contend the exception operates to toll the statute of limitations in situations where a patient is informed of an erroneous test result, so that the two-year statute of limitations begins to run from the date of discovery of the true and accurate test results. The plaintiffs misread the exception. Where test results have in fact been communicated, regardless of their accuracy, the exception in Section 516.105(2) has no application.

---

**5.** The other three exceptions—the "foreign object" exception, the "minor child" exception, and the "continuing care" exception—have no application in this case. The plaintiffs' cause of action did not involve a foreign object that had been negligently left inside Mr. Davidson's body, nor was Mr. Davidson a minor. Sections 516.105(1) and (3). Nor did the plaintiffs allege that Dr. Lazcano or WCP Laboratories provided any medical services after November 1998 to trigger the "continuing care" exception. *See Montgomery v. South County Radiologists, Inc.*, 49 S.W.3d 191 (Mo. banc 2001).

**6.** The General Assembly amended this exception, effective August 28, 2005, by adding the following sentence:

> For purposes of this subdivision, the act of neglect based on the negligent failure to inform the patient of the results of medical tests shall not include the act of informing the patient of the results of negligently performed medical tests or the act of informing the patient of erroneous test results.

In reaching our conclusion, we are guided by the principles governing statutory interpretation and statutes of limitations. In determining the meaning of a statute, this Court seeks to ascertain the intent of the legislature from the language used in the statute and, if possible, give effect to that intent. *Nelson v. Crane*, 187 S.W.3d 868, 869–70 (Mo. banc 2006). "We generally seek to ascertain the intention of the lawmakers by giving the words used their ordinary meaning, by considering the entire act and its purposes, and by seeking to avoid unjust, absurd, unreasonable, confiscatory or oppressive results." *State ex rel. Killingsworth v. George*, 168 S.W.3d 621, 623 (Mo.App. E.D. 2005) *citing State ex rel. Jackson County v. Spradling*, 522 S.W.2d 788, 791 (Mo. banc 1975). Provisions not found plainly written, or necessarily implied from what is written, in a statute will not be imparted or interprolated therein. *Missouri Public Service Co. v. Platte–Clay Elec. Co-op., Inc.*, 407 S.W.2d 883, 891 (Mo.1966).

The legislature has the power to enact statutes of limitations and inherent in that power is the power to fix the date when the statute commences to run. *Laughlin v. Forgrave*, 432 S.W.2d 308, 314 (Mo.1968). Statutes of limitations are favored in the law. *Id.; Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995) *citing Hunter v. Hunter*, 361 Mo. 799, 237 S.W.2d 100, 104 (1951). They cannot be avoided unless the party seeking to do so falls strictly within a claimed exception. *Butler*, 895 S.W.2d at 19 *citing Hunter*, 237 S.W.2d at 104. "Statutes of limitation may be suspended or tolled only by specific disabilities or exceptions enacted by the legislature, and courts cannot extend those exceptions." *Hammond v. Municipal Correction Institute*, 117 S.W.3d 130, 138 (Mo.App. W.D.2003). "Statutory exceptions are strictly construed and are not to be enlarged by the courts upon consideration of apparent hardship." *Butler*, 895 S.W.2d at 20 *citing Hunter*, 237 S.W.2d at 104.

The plaintiffs argue the plain and ordinary meaning of the exception's language—in particular the statutory phrase "negligent failure to inform the patient of the results of medical tests"—applies here and buttresses their interpretation of the statute as a "discovery of the truth" exception. In so arguing, the plaintiffs contend that the use of "negligent" to modify "failure" implies that the exception encompasses situations where the health care provider informs the patient as to the results of a negligently performed medical test. A negligent failure to inform a patient of the results of a test, however, is distinct from informing a patient of results of a test that was negligently performed. As written, the exception addresses an act of omission in failing to communicate test results, not an act of commission, the communication of a negligently conducted test. Put more simply, the exception applies if the negligence is in the failure to communicate.

The plaintiffs also contend that the term "inform" implies the "imparting of knowledge, especially facts." Accordingly, the plaintiffs argue that the failure to "inform" as used in section 516.105(2) encompasses the failure to impart facts, or the true and accurate meaning of the diagnostic testing. In short, under the plaintiffs' argument an erroneous test result is not a fact—therefore, a patient is informed of nothing until the true results of a properly conducted test are determined and communicated. We are unpersuaded by the plaintiffs' argument.

The plaintiffs essentially interpret the statutory phrase "failure to inform the patient of the results of medical tests" to mean "failure to inform the patient of the *true and accurate* test results." The legis-

lature could have expressly included the words "true and accurate" in the statutory language. It did not. Strictly construing the language as written, the statutory exception does not encompass those situations where a patient is indeed informed of test results, which are later discovered to be erroneous. And we will not read such a provision into the statute. Had the legislature intended to condition the "failure to inform" exception on the accuracy of the test results, thereby implementing a discovery rule for misdiagnosis cases, the legislature could have expressly done so. They did not.

The "failure to inform" exception is a relatively recent addition to the statute. Section 516.105 was first enacted in 1976; the "failure to inform" exception, however, was not added to the statute by the legislature until 1999. *See* 1999 Mo. Legis. Serv. H.B. 274. Statutes may be considered with reference to their historical background. *Scott v. SSM Healthcare St. Louis,* 70 S.W.3d 560, 570 (Mo.App. E.D. 2002). The General Assembly's addition of the "failure to inform" exception to the statute came in the year following the Missouri Supreme Court's decision in *Weiss v. Rojanasathit,* 975 S.W.2d 113 (Mo. banc 1998).

The plaintiff in *Weiss* brought a medical-malpractice action against her gynecologist who had failed to tell her that diagnostic test results were abnormal and showed a cancerous or precancerous condition. The physician asserted that the plaintiff's action was time-barred because the plaintiff did not bring her claim within two years of the alleged negligence as required by section 516.105. In attempting to circumvent the statute of limitations, the plaintiff invited the Supreme Court to adopt a "discovery" exception, arguing that the physician's failure to communicate her abnormal results was an act of neglect that contin-

ued until she actually obtained her test results.

The Supreme Court declined the plaintiff's invitation to adopt a "discovery" rule for the failure of a health care provider to inform a patient of test results. *Weiss,* 975 S.W.2d at 121. Strictly applying the statute as written, the Court noted that under section 516.105 the statute commenced running upon the occurrence of the act of neglect, not upon the ascertainment of the damage resulting from the wrong. *Id.* at 119. The Court further noted that the plain language of section 516.105 mandated that the action be brought within two years from the date of occurrence of the complained-of act of neglect. *Id.* The Supreme Court explained as follows:

[t]o summarize, this Court is constrained by the language section 516.105 from adopting any of the discovery theories urged by Ms. Weiss. The general assembly evidenced its clear intent to limit a discovery rule to cases concerning foreign objects. That is its prerogative. This Court must follow the policy determination expressed here.

*Id.* at 121. The Supreme Court expressed displeasure with the result, but stated that any change in the law should properly come from the General Assembly. *Id.* The legislature enacted the "failure to inform" exception the following year.

In view of this historical background, it is evident that the evil the General Assembly sought to address in enacting the statutory exception was the situation where a health care provider negligently fails to inform a patient of a test result. There is nothing in this historical background to suggest that the legislature intended to enact an exception that encompasses those situations where the health care provider communicates test results, which are later discovered to be erroneous.

Missouri courts have consistently refused to adopt a "discovery" rule for medical-malpractice claims. As discussed above, the Supreme Court in *Weiss* strictly applied section 516.105 as written and declined to adopt a "discovery" rule. In that same case, the Supreme Court also strictly applied the statute as written in discussing the case of *Maddox v. Truman Medical Center, Inc.,* 727 S.W.2d 152 (Mo.App. W.D.1987). In *Maddox,* the plaintiff underwent a lung biopsy at Truman Medical Center, and the physician reported to the plaintiff that the tissue was cancerous. The plaintiff underwent surgery, and about one half of her left lung was surgically removed and sent to the pathology department. The pathology report stated that the lung was not cancerous. The court of appeals concluded that the cause of action was one for unnecessary surgery, and that the statute of limitations began to run from the date of the unnecessary surgery, the alleged negligent act, and not from the date when the doctor misdiagnosed the plaintiff's tissue as cancerous. *Maddox,* 727 S.W.2d at 153. In discussing the *Maddox* case, the Supreme Court rejected the contention that *Maddox* created a "discovery" rule, stating as follows:

> [i]f *Maddox* is read to say that the statute of limitations does not commence until damages are discovered, it disregards the plain language of section 516.105. *Maddox* cannot be followed as authority for engrafting an exception to section 516.105.

*Weiss,* 975 S.W.2d at 118. This Court also declined an invitation to adopt a "discovery" rule for malpractice actions in *Green v. Washington University Medical Center,* 761 S.W.2d 688 (Mo.App. E.D.1988). In *Green* the plaintiff brought a medical-malpractice action against doctors and medical providers, alleging that during a 1984 examination the defendants negligently failed to diagnose the presence of calcified kidney stones. The plaintiff filed his action in 1987, alleging that he did not discover the defendants' alleged negligence until 1986. The trial court granted summary judgment for the defendants because the plaintiff did not timely file suit within the applicable statute of limitations. On appeal, this Court rejected the plaintiff's invitation to adopt a "discovery" rule for malpractice actions, noting that except where foreign objects are left in the patient, Missouri has rejected the adoption of a "discovery" rule for malpractice actions. *Green,* 761 S.W.2d at 690.

When the General Assembly amends a statute, we presume it was aware of the courts' prior interpretations of the statute. *Marston v. Juvenile Justice Center of The 13th Judicial Circuit,* 88 S.W.3d 534, 538 (Mo.App. W.D.2002). We presume, then, that when the legislature amended section 516.105 to add the "failure to inform" exception, it was aware of the courts' prior interpretations of the statute, the courts' strict adherence to the language of the statute, and the courts' refusal to engraft a "discovery" exception into the statute. It follows, then, that if the legislature had intended to create a "discovery of the truth" exception, it would have expressly done so.

The plaintiffs invite this Court to adopt a broad "discovery" rule, which would apply not only to the intended "failure to inform" cases, but also to "misdiagnosis" cases where a patient is informed of erroneous test results. We decline the invitation. By its plain language, the "failure to inform" exception of section 516.105(2) applies to toll the statute of limitations in those situations where a health care provider has negligently failed to inform the patient of the results of medical tests. Where test results have, in fact, been communicated, regardless of their accuracy, the exception in Section 516.105 has no

application. Nothing in the plain language of section 516.105(2) or in its historical background suggests the legislature intended such a sweeping change of Missouri law governing the limitations period for actions against health care providers.

There is no dispute in this case that the results of Dr. Lazcano's analysis of the biopsy specimen were reported to Mr. Davidson within two to three weeks of the biopsy in 1998. As such, the "failure to inform" exception set forth in section 516.105(2) does not apply in this case to toll the statute of limitations. The plaintiffs' action, filed nearly four years after the act of neglect of which they complain, is barred by statute of limitations set forth in section 516.105.

We are mindful that our holding today may deny an effective remedy to certain victims of medical malpractice who have sustained damages as a consequence of negligently performed medical tests, but do not discover such negligence prior to the running of the statute of limitations. To them, the law denies an effective remedy. But it is the legislature that has the power to enact statutes of limitations. *Laughlin,* 432 S.W.2d at 314. And it is the legislature's prerogative, within constitutional constraints, to establish the terms and conditions of the statute of limitations. Here, no constitutional objection was voiced. Thus, we are constrained by the language of the statute as it is written. The arguments addressed to this Court have in fact been raised in the General Assembly and it has rejected them.[7] That certain plaintiffs may be denied a remedy for the wrongs they have suffered is an injustice, but, absent a constitutional challenge, it is not an injustice that the courts are empowered to correct.

The judgment of the trial court is affirmed.

KATHIANNE KNAUP CRANE, P.J., and BOOKER T. SHAW, J., concur.

---

7. As we previously noted, the General Assembly amended this exception, effective August 28, 2005, by adding the following sentence: For purposes of this subdivision, the act of neglect based on the negligent failure to inform the patient of the results of medical tests shall not include the act of informing the patient of the results of negligently performed medical tests or the act of informing the patient of erroneous test results.